CLIFFORD MCCARVILLE dba MCCARVILLE MOTOR CO., appellant, v.
MILLER REAM (A. V. HASS, executor, substituted defendant)
appellee.

No. 48761.

(Reported in 72 N.W.2d 476)

2

OCTOBER 18, 1955.

Hoegh & Meyer and W. W. Bulman, all of Chariton, for appellant.

A. V. Hass, of Chariton, for appellee.

THOMPSON, J.—A bunch of the boys were whooping it up in the Hotel Fort Des Moines. The date was the night of March 20-21, 1947, and the occasion was the annual convention of the Iowa Automobile Dealers' Association. The "boys" were members of the Association and assorted friends, and this lawsuit grows out of what may be described as some of their extra-curricular activities which were probably not on the official agenda of the convention; in short, gambling games played with dice. As one witness described the scene: "The dice game took place in one of the large rooms at Hotel Fort Des Moines. In fact, there was maybe four or five games going on. The place was full of them."

The plaintiff was an automobile dealer at Carroll, and the original defendant, Miller Ream, operated an agency at Chariton. Both were present and there is substantial testimony both participated in the dice games. Miller Ream is now deceased and his

executor has been substituted; but we shall continue to refer to him as the defendant.

The action here was commenced by the plaintiff, who brought suit upon a check dated August 12, 1947, signed by the defendant and payable to "McCarville Motor" in the sum of $1500. This was given as part of the purchase price of an automobile. The only defense offered to it is in the nature of a cross-petition claiming upon six different checks of the plaintiff, one payable directly to the defendant and the others having been endorsed to him. They totalled $2250, and defendant prayed judgment against plaintiff in the amount of the difference between the check held by plaintiff—$1500—and the six checks held by him, or $750. To this cross-petition the plaintiff by way of answer and reply alleged, in substance, that each of said checks was given, executed and delivered for money lost to the respective payees in a gambling game of chance played with dice at Des Moines, Iowa, of all of which the defendant had knowledge. Just before the opening of the trial, in 1954, the defendant's answer was also amended by including an allegation that after the commencement of this action the plaintiff and defendant made an oral agreement of settlement and compromise by which all claims and counterclaims would be settled by the payment by defendant to plaintiff of the sum of $100; and defendant offered to confess judgment for said sum.

The trial court instructed the jury that the defendant admitted liability on the $1500 check, and this ruling is not questioned. The court submitted to the jury the issue raised by plaintiff's contention that the checks were void because given for money lost, laid, staked or bet in a gambling game, as to four of the checks, respectively Exhibits D-3, D-4, D-5, and D-6; but it refused to submit this issue as to Exhibits D-1 and D-2, and in effect directed a verdict for the defendant upon these checks, in the respective amounts of $1050 and $200. It also submitted the issue as to defendant's claim of accord and satisfaction by the alleged compromise agreement. The jury found for the plaintiff on all issues submitted to it; that is, it determined that the four checks, Exhibits D-3 to D-6 inclusive were void, and that there was no settlement agreement. Defendant has not appealed, so the only issue before us is the correctness of the court's determi-

nation that plaintiff did not engender a jury question as to whether the checks D-1 and D-2 were void because the consideration arose out of a gambling transaction.

I. The defendant does not question that the two checks in controversy would be void if given in connection with a gambling game under the provisions of Code section 537.4, which we set out:

"All promises, agreements, notes, bills, bonds, or other contracts, mortgages or other securities, when the whole or any part of the consideration thereof is for money or other valuable thing won or lost, laid, staked, or bet, at or upon any game of any kind or on any wager, are absolutely void and of no effect."

Nor does he challenge plaintiff's contention that it is immaterial whether defendant was an innocent holder for value.

In Plank v. Swift, 187 Iowa 293, 299, 174 N.W. 236, 238, 8 A. L. R. 309, we said: "But an insuperable objection to plaintiff's right of recovery is found in the established fact that the checks were given for a gambling debt; and, under our statute, they are absolutely void, even in the hands of a professed innocent holder."

Earlier Iowa cases are cited in support of the quoted holding.

The trial court was of the opinion that there was insufficient evidence to permit submission to the jury of the question whether Exhibits D-1 and D-2 were given in consideration of gambling losses. Exhibit D-1 is a check for $1050, dated March 20, 1947, drawn on the Carroll County State Bank, payable to the order of Ream Motor Company, and signed McCarville Motor Co., by Cliff McCarville. In the lower left-hand corner is the notation "1941 Chev. Coach, John Willy, Chicago Form 158." On the back are the endorsements "Ream Motor Co., Miller Ream, Homer Ritch, Miller Ream." Exhibit D-2 is a check for $200, dated March 21, 1947, drawn on the Carroll County State Bank, payable to Holmer Ritch, and signed "McCarville Motors, by Clifford McCarville." On the back is the endorsement "Holmer Ritch." In the lower left-hand corner is the notation "Cash."

It was the notations in the lower left-hand corners of these checks which apparently caused the trial court to differentiate them from the other four in ruling upon the question of submission to the jury. It was the thought of the court that each check showed on its face that it was given for a definite consideration— a 1941 Chevrolet coach as to the first check, and cash as to the second; and there was no substantial evidence to contradict these statements. We think there was competent evidence in the record that both checks were given in consideration of gambling losses, and that there was evidence improperly excluded as to Exhibit D-1 which tended strongly to contradict the claim it was given in payment for an automobile.

The defendant being deceased at the time of trial, the plaintiff was precluded from testifying to any transactions with him. However, there was substantial testimony given by one Mike J. Maystadt, who was in 1947 an employee of the plaintiff and had attended the convention with him. He said that he was present at the dice games, and further: "I have seen Exhibit D-1 before. * * * He didn't buy any car then. I saw Clifford McCarville write that check. * * * I saw Mr. McCarville write that check. It was given during the gambling game I referred to. * * * I saw the check D-2 before. I saw it given. Yes, it was given during the gambling game—was put on the table. * * * I saw Clifford McCarville sign that check and put it on the table in the gambling game. * * * I was in this hotel when Clifford McCarville quit gambling and went home. He had bet Exhibits D-1, D-2, D-3, D-4, D-5, and D-6 in that gambling game."

On cross-examination the same witness testified: "Q. That is the one (Exhibit D-1) you said he didn't get—didn't get any Chevrolet from Ream—that was lost in the crap game? A. Yes. Q. You say that was bet in the crap game? A. Why, Yes." Again he said: "I know these are the same checks for that is the time the crap game was in Des Moines, after the banquet. I know these are the ones because he lost the money. There wasn't any given for some other transaction. I know there wasn't any other transaction because I was with Mr. McCarville. * * * I think I saw him sign all these checks."

Here is a definite statement that the witness saw the origin of the checks and saw them lost in the dice game. Whether the

notations which seemed of governing importance to the trial court were placed there for the purpose of making the consideration seem something which it was not, became a jury question in the light of the above testimony. The defendant urges that at best the evidence was in equipoise as to whether the checks were involved in the dice game; and so that the plaintiff failed to carry the burden of proof resting upon him to establish his defense to the checks. We suggest it was for the jury to weigh the evidence and determine whether it was in fact evenly balanced. By taking the issue from the jury the court usurped its functions. Maystadt's testimony cannot be disregarded; it is substantial evidence and engendered a jury question.

■ II. Plaintiff also assigns error upon the exclusion of certain offered evidence tending to show there was no sale or transfer of an automobile from Miller Ream to Clifford McCarville in 1947. The county treasurer of Lucas County, where the defendant lived and operated his business, testified the law required that if a resident of Lucas County sold a car to someone in another county a record be made of the transfer in the treasurer's office; and he found no such record in 1947. The offered testimony of the county treasurer of Carroll County—the residence and place of business of the plaintiff—who produced the records of her office as to transfers of automobiles for the year 1947 was rejected by the court. She was asked whether the records showed a transfer of a 1941 Chevrolet car from the defendant to the plaintiff, and the records were offered in evidence. Error cannot be predicated upon this ruling, because there is no showing as to whether the answers would or would not have shown such a transfer. But we think upon another trial the evidence of the records will be competent.

■ Both plaintiff and defendant were retail dealers in automobiles. Section 422.50 of the Code requires that every retailer shall preserve for five years all invoices and other records of goods, wares or merchandise purchased for resale. George Busch, who was plaintiff's bookkeeper in 1947, produced plaintiff's book of original entries of sales and purchases for that year. He was not permitted to testify that there was no record of any purchase of an automobile by plaintiff from defendant. We think these

8

records were competent. Likewise the plaintiff offered as a witness Ellen Nutt, bookkeeper for the Ream Motor Company. She testified she had invoices of each individual sale by the defendant for March 1947, but was not permitted to say whether she found one evidencing a sale from Ream to McCarville. These records were likewise admissible in evidence. Again, we would not reverse for this exclusion, because we are not told what the records may show, but we express our views for the benefit of the court and counsel upon another trial.

III. That there is some evidence tending to contradict the notations on the two checks in controversy is not denied by defendant. His counsel says: "The most that can be claimed for the testimony of Maystadt, as an employee of plaintiff and given 7½ years after the transactions, is that it tended to contradict the admission of the plaintiff written on the checks that they represented legitimate business transactions. Giving it this importance would do no more than put the evidence in equipoise * * *." The ordinary purpose of a notation on a check is to show the consideration given and thus to make the check serve as a receipt. But a receipt may be explained or contradicted by outside evidence. In re Estate of Newson,. 206 Iowa 514, 524, 219 N.W. 305, 310; McGuire v. Interurban Railway Co., 199 Iowa 203, 215, 200 N.W. 55, 60; Mounce v. Kurtz, 101 Iowa 192, 195, 70 N.W. 119, 120. And there is no rule more firmly established than that when we are considering the propriety of a peremptory verdict we will give to the evidence of the aggrieved party the most favorable consideration possible under a reasonable construction and interpretation. Seldom will the courts be entitled to weigh the evidence and say that it is so evenly balanced the party upon whom rests the burden has failed to carry it and so a verdict must be directed. If there is substantial evidence tending to support a claim or defense, it becomes the function of the jury rather than the court to say where lies the weight of the proof.

IV. The defendant-appellee seems in his written brief and argument to place his chief reliance for affirmance upon his assertion that plaintiff did not prove the case he pleaded. He points out that it was plaintiff's claim in his pleadings that the checks were executed and delivered for money lost in a gambling game of chance played with dice; while the proof, if proof there

was, shows only that it was the checks that were lost. We assume that defendant is here arguing there was a fatal variance between the pleading and the evidence. Rule 106, R. C. P., is this:

"No variance between pleading and proof shall be deemed material unless it is shown to have misled the opposite party to his prejudice in maintaining his cause of action or defense. But where an allegation or defense is unproved in its general meaning, this shall not be held a mere variance but a failure of proof."

We find the general rule thus stated in 41 Am. Jur., Pleading, section 371, page 548: "The rule under the codes and practice acts is that a variance is material only where it actually misleads the opposing party to his prejudice in maintaining his cause of action or defense."

In Cross v. Hermanson Brothers, 235 Iowa 739, 743, 16 N.W.2d 616, 618, we said: "In a general way, courts are not inclined to look with favor upon such a contention", citing authorities to the effect that prejudice must be shown by the party complaining.

The only difference apparent here is that the plaintiff pleaded the checks were given for money lost, and proved it was the checks themselves that were lost. A check is an order to pay money, and its loss would in effect ordinarily be the loss of the money it represented, as applied to the facts in the case at bar. We are unable to see that defendant was in any wise deceived or misled by any variance here.

V. It is defendant's further claim that plaintiff failed to prove that he lost anything in the gambling game. We assume this must again be based upon the language of plaintiff's petition, which refers to money "lost". The statute itself does not make the validity of the check depend upon whether there was a loss. It is void when the consideration is for money or other valuable things "won or lost, laid, staked, or bet, at or upon any game of any kind * * *." But without deciding that the burden was upon plaintiff to show that he *lost* the checks in the game, we think there is substantial evidence that he did so. Upon cross-examination, the witness Maystadt said that he saw plaintiff sign Exhibit D-2. "Q. After he signed it, just tell me what he did with it? A. He lost it in the crap game." We have already set

out in Division I the testimony of the same witness, that Exhibit D-1 was lost in the game, and that he (plaintiff) "lost the money."

In addition to the direct testimony of plaintiff's losses, we consider a fair inference arises that when he wrote the checks, put them into the gambling game, and went away without them, a loss occurred. Courts are permitted to know, and occasionally do know, what everyone else knows. It requires no great analytical ability to deduce the reason why plaintiff failed to take his checks away with him, but left them to the mercies of his fellow followers of the goddess of chance. It is true that upon returning home he concluded the experience he had gained was not worth $2250 and stopped payment of the checks. But this would not prevent the jury concluding, if it saw fit and within the scope of the evidence submitted for its consideration, that he had originally lost them in a dice game. They had passed from his possession into that of some other person, with substantial evidence this transfer was in the course of the game.

VI.   Error is predicated upon the refusal of the trial court to permit one Friedman to testify. Friedman was an endorser on the checks Exhibits D-3 to D-6 inclusive, and objection was made that he was incompetent by virtue of the "dead man's statute". It was the evident thought of the trial court that his possible liability as endorser made him an interested party, and that his account of the activities of the night of March 20-21 would have concerned transactions with Miller Ream, then dead. We shall not attempt to solve this legal puzzle, in view of our holding in Division VII following. The only checks upon which Friedman appeared as payee or endorser, or both, are no longer involved in this case.

VII.   The cause must be reversed and remanded for further proceedings to determine the validity of Exhibits D-1 and D-2. All questions involving Exhibits D-3, D-4, D-5, and D-6 have been decided, as has the question of the claimed compromise agreement. We see no reason for submitting them to another jury. The decision as to these matters has not been appealed from. The issues were distinct and separable, and there is no danger of complications arising through failure to

require a new trial of the entire case. The rule is thus expressed in 3 Am. Jur., Appeal and Error, section 1227:

"The power of an appellate court in granting a new trial, where the error in the court below affects only some of the issues, to limit the new trial to the issues affected by the error has been exercised in a number of cases."

In Leipert v. Honold, 39 Cal.2d 462, page 466, 247 P.2d 324, page 327, 29 A. L. R.2d 1185, page 1189, it is said: "The power of a trial or appellate court to order a new trial on fewer than all the issues is generally recognized." In Downer v. Southern Union Gas Co., 53 N.M. 354, 208 P.2d 815, an action for wrongful death, one of the defenses was a claimed release. The court, while reversing on other grounds, found that the issue of the release and whether it was obtained by fraud had been properly submitted to the jury and determined in favor of the plaintiff. It said (page 359 of 53 N. M., page 818 of 208 P.2d): "* * * this issue was fully and fairly submitted to the jury and need not be again litigated. In other words, the release is out of the case."

A leading case upon the question of partial remands is Yazoo & Mississippi Valley R. Co. v. Scott, 108 Miss. 871, 67 So. 491, L. R. A. 1915E 239, Ann. Cas. 1917E 880, where the matter is discussed at length and the conclusion reached that the courts have the right to remand in proper cases upon part of the issues only. In Bedford v. Louisville, N. O. & T. R. Co., 65 Miss. 385, 387, 4 So. 121, 122, an action for damages for the killing of three horses by the defendant, the Mississippi Supreme Court said: "It was wrong to instruct the jury to find for the defendant as to the gray mare, * * *. In all else the judgment is affirmed; but as to the action for killing the gray mare, the judgment is reversed and a new trial awarded."

The matter was before this court as early as the case of Woodward v. Horst, 10 Iowa 120, 123. There the action was upon an account, brought by an assignee for the benefit of creditors. The defense was an agreement with the assignors that the defendant should have certain credit. The jury found for the defendant. The trial court granted a motion for new trial

as to so much of the account as was made after the assignment, but denied it as to that made before. We affirmed, saying:

"But the plaintiff claims that the verdict being set aside as to part of the demand, it should have been as to all. We do not think that he could demand this as a matter of right, nor that he has any ground to claim that he has been prejudiced. * * *

"It may be admitted, that as a general rule a new trial when granted is awarded for the entire case, and that ordinarily, courts will not dispose of a cause by piecemeal. And yet when not attended with too much confusion or inconvenience, or where it can be done without prejudice to the rights of parties, there is no substantial or valid objection to departing from the general rule."

See also Keller v. Gartin, 220 Iowa 78, 85, 86, 261 N.W. 776, 780.

In Case Threshing Machine Co. v. Fisher, 144 Iowa 45, 122 N.W. 575, the court submitted three items of defendant's counterclaim to the jury, which returned a verdict for the full amount of the three. The trial court, believing it had erred in its instructions as to one of the claims, granted a new trial as to it only. We said (page 51 of 144 Iowa, page 577 of 122 N.W.): "Notwithstanding the verdict was general as to the three items of counterclaim, the court did not err in granting a new trial as to one item of counterclaim and deducting the amount of that item from the general verdict * * *. As to the two items thus covered by the judgment, there was no prejudice to plaintiff in granting a new trial on the other item of counterclaim."

In Larimer v. Platte, 243 Iowa 1167, 1175, 1176, 1177, 53 N.W.2d 262, 267, 268, we were concerned with the failure of the jury to follow the instructions of the court. We said (page 1177 of 243 Iowa, page 268 of 53 N.W.2d): "It is true the verdict returned was on Platte's counterclaim. While the jury should not have considered an award to Platte on his counterclaim unless it first determined plaintiff should not recover on his claim, we are not justified in assuming that a jury which failed to follow part of the instructions followed them in other respects. It cannot be said with confidence that the issues raised by plaintiff's claim were fairly tried and determined under the

instructions when the contrary appears as to the issues raised by the counterclaim."

We then quoted with approval: " '* * * new trials may be so limited, where manifest justice demands, and * * * it can be said with confidence that certain of the issues have been fairly tried and determined * * *.' 66 C. J. S., New Trial, section 11a."

The case at bar is clearly distinguishable from Larimer v. Platte, supra. It can be "said with confidence" that the issues as to the claimed compromise agreement and as to the four checks Exhibits D-3 to D-6 inclusive were "fairly tried and determined". There seems no doubt that a new trial may be had as to Exhibits D-1 and D-2 without complication with other matters. We do not have a question of the amount of damages assessed, nor any question that the jury misunderstood or refused to follow the instructions of the trial court. No claim is made that it did not decide fairly all issues which the court submitted to it. The general rule is that the entire case is to be remanded, but we think the exception is properly applied here. It is true there is language in Bond v. Wabash, St. L. & P. R. Co., 67 Iowa 712, 717, 718, 25 N.W. 892, 894, which might be taken to mean that a partial reversal may never be ordered by this court. But we have recognized the right not only in Larimer v. Platte, supra, but in Keller v. Gartin, 220 Iowa 78, 86, 261 N.W. 776, 780, and in In re Estate of Ring, 237 Iowa 953, 968, 22 N.W.2d 777, 785. In the Keller case we said: "If this were the only error in the case, we might be inclined to confine our reversal merely to the portion of the claim assigned to the plaintiff * * *." In re Estate of Ring, supra, refers to the rule in this language: "It is, of course, proper for this court, where the record warrants it, to reverse a case as to one issue and affirm it as to other issues." It might also be urged effectively that there are no issues involved in this appeal except those concerning the two checks Exhibits D-1 and D-2.

Manifestly, to remand the entire case here for another trial would be an injustice to plaintiff. It would compel him to forfeit what he obtained by a fair trial upon the issues as to the claimed compromise agreement and as to the checks Exhibits D-3 to D-6 inclusive, in order to obtain a proper determination as to Exhibits D-1 and D-2. The Mississippi case of the old gray mare,

Bedford v. Louisville, N. O. & T. R. Co., supra, is much in point upon its facts. The ends of justice will be far better served here by limiting the issues to be determined upon remand and new trial to those concerning the validity of Exhibits D-1 and D-2. All issues concerning the validity of these two exhibits as raised by plaintiff's substituted answer to cross-petition should be submitted, and none other. The cause is reversed and remanded for further proceedings in accordance with this opinion. Reversed and remanded.

All JUSTICES concur.