LAURA M. SOREIDE, administratrix of estate of Edwin S. Soreide, deceased, appellee, v. VILAS & COMPANY, a corporation, et al., appellants.

STANDARD OIL COMPANY, a corporation, appellee, v. VILAS & COMPANY, a corporation, et al., appellants.

No. 48951.

(Reported in 78 N.W.2d 41)

1140

JULY 26, 1956.

REHEARING DENIED SEPTEMBER 24, 1956.

Wendell T. Edson, of Storm Lake, Sifford & Wadden, of Sioux City, and Wilson & Vest, of Sac City, for appellants.

Shull, Marshall, Mayne, Marks & Vizintos, of Sioux City, for appellees.

GARFIELD, J.—These two law actions, consolidated for trial, resulted from a nighttime collision of two automobiles at or near a "Y" intersection of paved primary highways on May 21, 1954. One action is for damages to the Chevrolet car of plaintiff Standard Oil Company, the other for damages to the estate of the employee-driver of that vehicle, Edwin S. Soreide, killed in the collision. Defendants are Vilas & Company, owner, and Oliver W. Vilas, driver, of the other car, a Cadillac. There was a jury verdict and judgment for each plaintiff from which defendants have appealed.

The collision occurred on east-and-west U. S. Highway 20 near the place where the west branch of the "Y" approach from Iowa Highway 110 joins 20 from the north. Highway 110 does not go farther south. The Vilas Cadillac was proceeding east on 20. Mr. Vilas intended to turn north onto 110 over the west branch of the "Y." Vilas, sole surviving eyewitness to the crash, testifies the Chevrolet came down the west fork of 110, "didn't stop at the intersection, came right through onto 20, across in my (south) lane and crashed into my car."

Plaintiffs' cases necessarily rest on circumstantial evidence consisting primarily of tire and other marks upon or near Highway 20 and physical facts at the scene of the collision from which plaintiffs claim the jury could properly find the Chevrolet did not come down the west branch of the "Y" as Vilas testifies but was traveling west on 20 and Vilas negligently caused the collision by driving on the wrong (north) side of the center line where the cars collided.

Questions presented on appeal are whether the court erred in admitting evidence of marks upon the highway and in overrul-

ing defendants' motions for directed verdict, judgment notwithstanding verdict, and new trial. It is also claimed the judgment on the verdict for $50,000 in the Soreide case is excessive.

I. Of course plaintiffs had the burden to prove the collision and resulting damage were caused by the negligence of Vilas in one or more of the respects alleged by them and that Soreide was free from contributory negligence.

 Since the parties disagree as to the requisite degree of proof in a case resting on circumstantial evidence we will repeat what so many recent decisions say on that point. The evidence must be such as to make plaintiffs' theory of causation reasonably probable, not merely possible, and more probable than any other theory based on such evidence. It is not necessary the testimony be so clear as to exclude every other possible theory. Turner v. Hansen, 247 Iowa 669, 677, 75 N.W.2d 341, 345; Bokhoven v. Hull, 247 Iowa 604, 607, 75 N.W.2d 225, 227, and citations; Whiting v. Stephas, 247 Iowa 473, 479, 74 N.W.2d 228, 231, 232; Shinofield v. Curtis, 245 Iowa 1352, 1357, 66 N.W.2d 465, 468, 50 A. L. R.2d 964, and citations.

Hackman v. Beckwith, 245 Iowa 791, 795, 64 N.W.2d 275, 278, adds following the statement of the above rule: "But this means only the evidence must be such as to raise a jury question within the limits of the foregoing rule; it need not be conclusive."

In considering defendants' contention the testimony is insufficient for submission to the jury of course we view it in the light most favorable to plaintiffs. Weilbrenner v. Owens, 246 Iowa 580, 582, 68 N.W.2d 293, 294, and citation; Hackman v. Beckwith, supra.

 II. We disagree with the contention defendants stress that an inference may not be based upon another inference or upon a fact the existence of which itself rests upon an inference. While some authorities use substantially the statement defendants urge upon us it is unsound and, like many other courts, we have rejected it. Inferences may legitimately rest on facts established by other inferences. What is meant by the alleged rule for which defendants contend is merely that an inference may not be based upon evidence which is too un-

certain or speculative or raises only a conjecture or possibility. See Martin v. Bankers Life Co., 216 Iowa 1022, 1036-38, 250 N.W. 220, 226, 227; Welsch v. Charles Frusch L. & P. Co., 197 Iowa 1012, 1021-22, 193 N.W. 427, 431; Fegles Constr. Co. v. McLaughlin Constr. Co., 9 Cir., Mont., 205 F.2d 637, 640, and citations; Toliver v. United States, 9 Cir., Cal., 224 F.2d 742, 745; annotations 95 A.L.R. 162, 182, 187, 188; 1 Wigmore on Evidence, 3d Ed., section 41; 1 Jones Commentaries on Evidence, 2d Ed., section 364; 31 C. J. S., Evidence, section 116b, page 730; 20 Am. Jur., Evidence, section 165, page 169.

Fegles Constr. Co. v. McLaughlin Constr. Co., supra, cites numerous decisions from different jurisdictions for the statement "The fallacy that an inference may not be based on another inference has been frequently repudiated by the courts * * * ."

III. Defendants argue it was error to admit evidence, said to be "inherently improbable or impossible", of marks upon and near Highway 20 which plaintiffs claim show the Chevrolet was traveling west on 20 in its right (north) lane and the collision occurred there. The evidence referred to describes a fresh tire mark 74 feet 10 inches long in the north lane of 20, starting 4½ feet west of a V-shaped blacktop area north of Highway 20 and southeast of the west approach from 110. The west three feet of the mark were smeared. The mark is shown by the broken line designated "B" on the accompanying plat, prepared from an exhibit. About three feet south of the west end of the long tire mark, a little south of the center of the north lane, there was a fresh crescent-shaped gouge in the concrete pavement, about two feet long and one-fourth inch deep. "It was bright and new. Just happened." This gouge is marked "A" on the accompanying plat. Northwest of the gouge there was a fresh tire mark, designated "C" on the plat, on the north curb of 20 at the west side of a lane leading to a farmstead. "It looked similar to this long skid mark." The Soreide car came to rest where the rectangle north of the highway, marked "S", appears on the plat. On a direct line between the tire mark "C" and the wrecked Chevrolet the sod was freshly torn in several places. "It looked as though an object had skidded across the grass and plowed it out."

This plat, above referred to, may help visualize the physical facts at the scene of the tragedy. The rectangle marked "V" just east of the entrance to the Jacobson driveway repre-

sents the Cadillac as it came to rest. The other two rectangles on 20, marked "V" and "S", indicate the location of the two cars, as testified to by Vilas, when they collided.

We have no doubt it was proper to admit the evidence as to the tire and other marks on and near Highway 20 at the scene of the crash. It is well settled that testimony descriptive of tire marks at the place of a collision is admissible, especially on the question of the location of the vehicles with respect to the center of the highway, where as here it may be reasonably inferred the marks were made by one of the colliding vehicles. Weilbrenner v. Owens, supra, 246 Iowa 580, 587, 68 N.W.2d 293, 297, and citations, especially annotations 23 A.L.R.2d 112, 116; Thornbury v. Maley, 242 Iowa 70, 77, 78, 45 N.W.2d 576, 581; Brady v. McQuown, 241 Iowa 34, 37, 38, 40 N.W.2d 25, 28. See also Slabaugh v. Eldon Miller, Inc., 244 Iowa 29, 33, 55 N.W.2d 528, 530, which says, "Often there are skid marks which seem to indicate the true situation; * * * The marks are persuasive, but not conclusive." It was there contended marks upon the pavement conclusively rebutted opposing direct testimony.

There is ample basis for the inference the long tire mark, the mark on the north curb and the torn places in the sod were made by the Soreide automobile and that the collision occurred at or near the gouge in the north lane of the pavement. The cars crashed about 11 p.m. Mr. and Mrs. Jacobson heard the collision and rushed to the window to see what happened. Jacobson testifies he "couldn't get out there fast enough", he then saw the long skid mark, the gouge in the concrete, the mark on the north curb and the torn places in the sod on a line to within a few feet of the Chevrolet. He describes all of them. He had been over this stretch of highway several times that day, as late as 7 p.m. He was sure the long skid mark was not there and he did not observe the gouge in the pavement at that time. Jacobson also says the gouged-out places in the sod were not there the morning before the cars crashed.

State Highway Patrolmen Grotewald and Kurtz, with long experience investigating highway accidents, reached the scene about a half hour after the crash. The two cars had not been

moved. They observed the same marks Jacobson saw and describe their location and appearance substantially as he does. Grotewald testifies there were seven "ribs" in the long skid mark, the same design he found on the front tires of the Chevrolet. Grotewald says too, what seems obvious, "Whatever danger the driver of the car which made the skid mark apprehended, he saw it when he was (a) further distance back from the beginning of the mark." Other testimony tends to bear this out. Grotewald also testifies that two pictures showing each of the wrecked cars indicate the point of contact was the left front of both vehicles.

State Highway Patrolman Soppeland, a fatality investigator for the patrol, arrived at the scene between 8 and 9 the morning after the crash. Patrolmen Grotewald and Kurtz and the farmer, Jacobson, were also there that morning. These last three say, in effect, conditions were then substantially the same as the night before. The patrolmen measured the long skid mark and took several other measurements at the scene. Patrolman Soppeland testifies he "saw a large stain that covered the center of the pavement, more to the north than it did to the south, at about the west edge of the skid mark and where this gouged-out place was in the north lane." This witness examined the torn places in the sod to make sure they were fresh.

Patrolman Kurtz says that on the night of the collision "we" inspected the south shoulder and ditch for about 40 to 45 feet east, and 10 to 15 feet west, of where the Cadillac came to rest, found no marks in that area and the surface had not been disturbed.

Defendants' argument on this assigned error covers a wide range and really goes to the sufficiency of the evidence to warrant submission of the cases to the jury. It is argued it is more probable the long skid mark was made by a westbound car defendants' witness Grohe testifies he "flagged down" with a lantern after the crash. Grohe and his wife both say the brakes of this car "squealed" in coming to a stop about even with the drive leading into the farmstead on the north.

While it is possible the long mark was made by the car Grohe testifies he flagged, we are clear the jury could prop-

erly find this claim is improbable or at least less probable than the theory the Soreide car left the mark. In the first place, testimony of Mr. and Mrs. Grohe in one important respect is contradicted by plaintiffs' witnesses Mr. and Mrs. Ludvigson. The Grohes' evidence that brakes of a car "squealed" in stopping is also left in doubt by Jacobson's testimony he saw or heard no car after the crash that had difficulty in coming to a stop. Another witness says his car approached the scene from the east when only the Grohes and Jacobson were there, he was "flagged down" with a light and stopped gradually without "squealing" his brakes. There is no testimony more than one westbound car was flagged with a lantern at about this time. There is no comparison of the long skid mark with the design of the tires on the car that was flagged.

Further, the jury could legitimately find *the same car that made the long mark also made the mark on the north curb and the gouges in the sod.* There is no evidence to support an inference the automobile Grohe testifies he flagged made any of these other marks or the gouge in the concrete. This is a persuasive circumstance in favor of plaintiffs' theory that their car made the long mark.

IV. Defendants' argument they were entitled to directed verdicts seems to be largely based on the claimed inadmissibility of the circumstantial evidence the preceding division holds was properly received. Their motions to direct allege the proof of defendant Vilas' negligence and Soreide's freedom from contributory negligence is insufficient. We think the testimony on the issues sufficient for submission to the jury.

At the outset we called attention to Mr. Vilas' evidence that the Soreide car came down the west approach from 110, did not stop at the intersection, crossed over into the south lane of 20 and crashed into his Cadillac there. Vilas testifies at least three times he did not turn to the left before the collision although he planned to turn left into 110. Under the circumstances shown, the jury was not compelled to accept Mr. Vilas' testimony as a verity. The entire record warrants the finding the facts were not as testified by him. See Smith v. Darling & Co., 244 Iowa 133, 141, 56 N.W.2d 47, 52, and citations.

As we have indicated, there is persuasive evidence—circumstantial, it is true—the cars crashed in the north lane, contrary to Vilas' version of where the collision occurred. His testimony Soreide came down 110 and failed to stop for Highway 20 is no more convincing than his version of where the cars collided. The same evidence that indicates the crash occurred in the north lane also signifies Soreide came from the east on 20, not down 110. It is extremely improbable the automobile which made the long skid mark was not proceeding west on 20. Location of the mark indicates the car was traveling in its proper lane and the driver made an effort to avoid the collision.

Defendants rely on the location of the Cadillac after the crash as rendering plaintiffs' theory of the collision improbable. It came to rest 70 to 75 feet west of the gouge in the concrete. This and other circumstances defendants suggest did not entitle them to directed verdicts. Mr. Vilas testifies he reduced his speed to 25 miles an hour, knowing he was approaching the intersection and that when the crash came, "I was aware of a spinning sensation and that's all I remember about that accident." There is substantial evidence to indicate the left front of the two vehicles collided. The jury could find it is not improbable the lighter Chevrolet sent the Cadillac "spinning" counterclockwise to the west as much as 70 to 75 feet.

Plaintiffs' cases are fully as strong as in Smith v. Darling & Co., supra, 244 Iowa 133, 56 N.W.2d 47, and the earlier precedents cited at page 144 of the Iowa Report; Hackman v. Beckwith, supra, 245 Iowa 791, 64 N.W.2d 275, and Guyer v. Elger, 8 Cir., Iowa, 216 F.2d 537. All of them hold a case for the jury was made by circumstantial evidence, notwithstanding contrary direct evidence for defendant. There is no dissent from any of these decisions.

If, as we hold, plaintiffs' theory of the collision has rational and substantial support in the evidence, the fact, if it be a fact, that reasonable minds might differ as to which of the opposing theories has better support would not justify the court in taking the cases from the jury. See Carpenter v. Security Fire Ins. Co., 183 Iowa 1226, 1233, 168 N.W. 231; Welsch v. Charles Frusch L. & P. Co., supra, 197 Iowa 1012, 1020, 193 N.W. 427; Hiatt v. Travelers Ins. Co., 197 Iowa 153, 162, 197

N.W. 3, 33 A.L.R. 655; Hayes v. Stunkard, 233 Iowa 582, 586, 587, 10 N.W.2d 19, 21; Hackman v. Beckwith, supra, 245 Iowa 791, 795, 64 N.W.2d 275, 278. See also McCarville v. Ream, 247 Iowa 1, 8, 72 N.W.2d 476, 480.

It was not error to overrule defendants' motions for directed verdict and judgment notwithstanding verdict.

V. Defendants' motion for new trial asserts it was error, because of lack of supporting evidence, to submit to the jury four of the five specifications of negligence found in plaintiffs' petitions. They charge Vilas was negligent in : (1) turning his vehicle from a direct course upon a highway when such movement could not be made with reasonable safety; (2) failing to give half the traveled way by turning to the right when meeting the Soreide vehicle; (3) failing to keep a proper lookout; and (4) failing to keep his car under control. Defendants' claim of error in this respect is completely answered by Hackman v. Beckwith, supra, 245 Iowa 791, 801 to 803, 64 N.W.2d 275, 282, 283 (Division V of opinion). We need not repeat what is there said.

As we have pointed out, plaintiff's evidence in the cited case was wholly circumstantial as opposed to direct evidence for defendant. There too, as here, a vital question was on which side of the roadway the vehicles collided. Specifications 2, 3 and 4, above, are substantially the same as three of the four specifications the Hackman case holds were properly submitted there. The first specification here, in effect, charges a violation of section 321.314, Code, 1954. It follows from what we have said in Divisions III and IV hereof and from our conclusion it was proper to submit specification 2 above referred to, it was not error to submit the first specification.

Perhaps we should point out the charge of lack of control in Hackman v. Beckwith, supra, was in approaching a curve, rather than an intersection. However, Code section 321.288, subsection 3, requires the operator of a motor vehicle to have it under control when approaching and traversing an intersection of public highways as well as a curve. It is without dispute Mr. Vilas was approaching an intersection. (See Code section 321.1, subsection 54.)

VI. Defendants' motion for new trial objects to instruction 7 to the jury. They argue here some grounds for the objection not made on the trial before the instructions were read to the jury. Defendants are not entitled to have these added grounds considered here. Rule of Civil Procedure 196; Reed v. Willison, 245 Iowa 1066, 1071, 65 N.W.2d 440, 442, 443, and citations; Ehrhardt v. Ruan Transport Corp., 245 Iowa 193, 201, 61 N.W.2d 696, 701.

Defendants' only timely objection to instruction 7 is that it is not a complete statement of the rule governing circumstantial evidence and does not say that if the testimony in regard to theories puts them in equipoise plaintiffs cannot recover. We hold the instruction is not error in the respect claimed.

Instruction 7, so far as material now, states the requisite degree of proof in a case resting on circumstantial evidence as we express it in Division I hereof and in many recent decisions. While the instruction does not say in so many words that if the testimony is in equipoise plaintiffs cannot recover, it does require them to prove their theory is more probable than any other theory based on such evidence. It is clear a theory that is more probable than an opposing one has stronger support than a theory left in equipoise. There is no substantial basis for the objection urged to instruction 7.

Although the point was not properly raised upon the trial we may observe the last paragraph of instruction 7 is a virtual repetition of the preceding one and should have been omitted. It is well to avoid repetition in an instruction because the jury may attach undue importance thereto.

VII. There is no merit to defendants' contention the testimony of Patrolman Soppeland as to his observations and measurements at the scene is rendered inadmissible by Code section 321.271 which provides: "All accident reports shall be in writing and the written report shall be without prejudice to the individual so reporting and shall be for the confidential use of the department, except that * * *. A written report filed with the department shall not be admissible in * * * any civil case arising out of the facts on which the report is based."

Bachelder v. Woodside, 233 Iowa 967, 972, 974, 9 N.W.2d

464, 467, holds what is now section 321.271 "does not prevent the officer from testifying as to his observation made at the scene of the accident and other information obtained at other times." This holding is noted with apparent approval in State v. Williams, 238 Iowa 838, 848, 28 N.W.2d 514, 520.

Goodman v. Gonse, 247 Iowa 1091, 1104, 76 N.W.2d 873, 880, 881, holds section 321.271 does not prevent a highway patrolman from testifying to statements he overhears at the scene of an accident which were not intended as a report or information therefor. The opinion points out that while information disclosed to a patrolman gathering it for a report to the public safety department is privileged under this statute, "we do not extend such exclusion to things observed by the patrolman, * * *."

Although the Michigan statute differs somewhat from ours, Wallace v. Skrzycki, 338 Mich. 164, 177, 61 N.W.2d 106, 110, states: "* * * the statute in question does not bar a police officer from testifying concerning physical facts observed by him * * * at the scene of an accident * * *." Other decisions on this general subject are annotated in 165 A.L.R. 1302.

The testimony of Patrolman Soppeland, although largely cumulative to that of Officers Grotewald and Kurtz and the farmer Jacobson, is relevant and material. We should not extend section 321.271 by construction to render such evidence inadmissible.

VIII. Finally defendants contend the verdict of $50,000 for the pecuniary loss to Soreide's estate is excessive.

Decedent was 33. The normal life expectancy of one that age is 35.15 years. He graduated from high school, served six years in the Navy and attended the State University of Iowa one year. Soreide was married and had an adopted son, age three. He was employed by Standard Oil in 1947 as a station attendant at $175 a month. At his death in May 1954 he was a "reseller salesman" for the company at $468 a month. He and his wife owned household furniture, he had a 1947 Chevrolet and savings of $1,115. Soreide enjoyed good health, had a pleasant disposition, was very energetic and interested in his work. His funeral bill was $808.

 The measure of recovery for Soreide's death is the reasonable present value of his life to his estate. By this is meant the present worth of the estate he would reasonably be expected to save as a result of his efforts between the time of his death and the end of his natural life if he had lived. To this may be added interest on the reasonable funeral expense for such time as it was prematurely incurred. See Hackman v. Beckwith, supra, 245 Iowa 791, 807, 64 N.W.2d 275, 285; Jettre v. Healy, 245 Iowa 294, 302, 60 N.W.2d 541, 546. The jury was so instructed here and no complaint is made of the instruction.

 We have frequently pointed out the allowance in such a case is primarily for the jury and we should not interfere unless it clearly appears the verdict was prompted by passion and prejudice or other ulterior influence or the jury disregarded the evidence or the court's instructions. See decisions last above and citations therein. We have also said the court may disturb a verdict the amount of which appears unconscionable or clearly not warranted by the record. Dunham v. Des Moines Ry. Co., 240 Iowa 421, 430, 35 N.W.2d 578, 584. Also that we may interfere with verdicts not supported by sufficient evidence. DeToskey v. Ruan Transport Corp., 241 Iowa 45, 51, 40 N.W.2d 4, 8, 17 A.L.R.2d 826; Booth v. General Mills, Inc., 243 Iowa 206, 211, 49 N.W.2d 561, 563.

Many of our recent opinions that consider the size of a verdict comment upon the greatly reduced purchasing power of the dollar. We have also recognized, however, there is force in the argument for a defendant that by the same token the cost of living has risen sharply so it is much more difficult for even the most thrifty to save. Hackman v. Beckwith, supra, at page 808 of 245 Iowa. This is especially true if taxes are included in the cost of living.

 Several of our decisions observe that comparison of verdicts is not a satisfactory method for determining an award in a particular case—each must be determined upon the evidence therein. DeToskey v. Ruan Transport Corp., supra, and citation at page 50 of 241 Iowa; Jettre v. Healy, supra, at page 302 of 245 Iowa; Hackman v. Beckwith, supra, and citations, at page 807 of 245 Iowa.

Nevertheless it is proper to observe that this verdict of

$50,000 appears to be nearly twice as large as any other verdict in a death case to come to this court. Largest previous recovery in such a case appears to be slightly under $27,000 in Hackman v. Beckwith, supra. We upheld the verdict but recognized its size presented a troublesome proposition. DeToskey v. Ruan Transport Corp., supra, 241 Iowa 45, upholds a verdict for $23,325. Jettre v. Healy, supra, 245 Iowa 294, 302, and Dunham v. Des Moines Ry. Co., supra, 240 Iowa 421, 430, 431, each sustains a verdict for $20,000.

 The record here, however, supports a substantially larger recovery than in the cases just cited. But we think it does not support the allowance that was made. While the award in such a case is necessarily somewhat of an approximation and much must be left to the good judgment of the jury we are convinced this verdict for $50,000 is not warranted by the evidence, was reached in disregard thereof and all in excess of $37,500 must be held to be excessive.

If, within 30 days from the filing of this opinion, plaintiff-administratrix shall remit all of the judgment in excess of $37,500 with interest and costs the judgment will be affirmed, otherwise reversed and remanded for a new trial.—Affirmed on condition.

THOMPSON, C. J., and BLISS, OLIVER, WENNERSTRUM, and PETERSON, JJ., concur.

SMITH, HAYS and LARSON, JJ., dissent.

SMITH, J. (dissenting)—I must respectfully disagree with the majority. A dissent in a law case should of course not be filed unless some basic principle of law is at stake. But our duties in such cases is to enforce legal doctrines rather than to attain what may seem to us to be justice in the individual case. We best serve the broader ends of justice by following strictly the general rules of procedure that have been found most likely to promote justice.

The importance of this consideration appears when dealing with the admission of evidence and observance of the rules to be applied by the jury in determining facts in absence of direct evidence or, as here, in possible contradiction of direct evidence. Our rule for admission of circumstantial evidence, while less

strict than in many jurisdictions, is still designed so far as possible to prevent adjudication upon mere speculation. It should be strictly followed.

The burden upon one who seeks damage for alleged injury in an auto collision is well understood. He must establish both the causative negligence of the other party and his own freedom from contributory negligence. The latter requirement is frequently not so difficult where under the "no-eyewitness" rule he can invoke an inference that he obeyed a statutory requirement or followed the instinct of self-preservation. But such inferences avail him not as against direct testimony of an eyewitness. Rickabaugh v. Wabash R. Co., 242 Iowa 746, 748 et seq., 44 N.W.2d 659. See Loucks v. Fox, 261 Mich. 338, 246 N.W. 141.

Of course real circumstantial evidence, if available, may under proper safeguards be admitted to create a fact question for the jury even as against direct evidence. And I am aware of the authorities cited by the majority so holding. But where there is direct testimony of contributory negligence, or direct testimony negativing the plaintiff's freedom from such negligence, the safeguards should be strictly insisted on to prevent a decision based upon mere conjecture or surmise.

The formula we have adopted in Iowa for admission of such evidence is probably as well and generally understood as repeated statement can make it: The circumstances relied on must be such as to make the desired theory reasonably probable, not merely possible, and more probable than any other. It has in numerous opinions been carefully worded both affirmatively and negatively. It requires *more reasonable probability* than any other, and expressly excludes *mere possibility*. It defines what is, and what is not, admissible and is clearly designed to reduce to a minimum the danger of a determination by the trier of fact, based on guess or speculation.

Of course the jury in a law action is the trier of fact. But the court should not abdicate its duty of determining *when* a question of fact is presented—its duty of forestalling judgments such as the one involved here which are clearly based on conjecture and mere possibility instead of any real probability sug-

▬▬▬▬▬▬ ▬▬▬

gested by the evidence. The proper performance of that duty requires a determination of a question of law.

In my judgment the majority opinion here errs by its failure to perform that duty in respect of the issue of Soreide's freedom from contributory negligence. Defendant Vilas testified unequivocally that the Soreide (or Standard Oil Company) car came down the west fork of Highway 110. He estimated it was "about a block and a half up the highway from the intersection." He says: "It didn't stop at the intersection. It came right through onto Highway 20 * * *."

It is undisputed there was a statutory stop sign with at least two preliminary warning signs on No. 110 as it approached No. 20. A failure to stop before entering No. 20 from No. 110 would be negligence per se unless excused by some circumstance not now conceivable or suggested in the record. Section 321.345, Iowa Code, 1954; Hogan v. Nesbit, 216 Iowa 75, 77, 246 N.W. 270; Willemsen v. Reedy, 215 Iowa 193, 196, 244 N.W. 691.

Clearly this Vilas testimony expressly negatived Mr. Soreide's freedom from contributory negligence and destroyed any presumption or inference that may have otherwise been claimed up to that time under the "no-eyewitness rule."

But the majority opinion holds there was circumstantial evidence consisting of a single tire mark extending approximately 75 feet in the north travel lane of Highway 20, westerly from a point described (somewhat indefinitely) by the highway patrolman (Grotewald) who made the measurement, as "3 feet seven inches south of the north edge of the curb on Highway 20." That of course does not fix its eastern starting point.

He identified its eastern end on Exhibit A and undertook to show its course on the exhibit westerly by the scale by which the exhibit itself had been drawn by another witness. The original Exhibit A was drawn to a scale of one inch to ten feet. Manifestly the plat appearing in the majority opinion can give at best a very inadequate idea of the actual physical situation. It may help "visualize" the general physical appearance but is an unsound item to be treated as evidence. Kurtz, another patrolman, says "the east end of it (the single tire mark) was about three feet from the *north edge of the pavement*." (Emphasis supplied.) Its distance east is still not stated.

Another patrolman (Soppeland) gives the east starting point of this "tire mark, or tire burn" as "a point about four feet and some inches" (later he says 4 feet 6 inches) "from where the blacktop joins into the corner of 110 and 20." That seems to be the only attempt to fix its eastern starting point.

This skid or tire-mark testimony was admissible as bearing on the place of impact of the two cars on the pavement. But it adds no weight of probability to contradict Vilas' testimony as to the direction from which Soreide and his companion were coming. Vilas might easily be mistaken as to being entirely in his own lane of travel. But he could not mistake the direction of a car coming straight from the east and think it was coming from the north on Highway 110.

The Chevrolet was admittedly traveling at tremendous speed if it overcame the eastward momentum of the much heavier Cadillac and hurled it back 75 feet. Coming down No. 110 to the right turn on No. 20 it would either have to slow down or swing considerably to the left in order to widen and make possible the turn west. I am not prepared to affirm on such flimsy evidence a verdict and judgment convicting a reputable man of intentional perjury. I find here no evidence upon which to allow a jury to hold plaintiffs' theory to be "reasonably probable, not merely possible, and more probable than any other."

Plaintiffs urge another basis upon which it is claimed the jury could properly find plaintiffs' car came from the east on No. 20 instead of from the north on No. 110. It involved testimony that Soreide was in 1949 familiar with roads in the vicinity and an assumption that because no longer employed in the immediate area he was unfamiliar with later road improvements. Plaintiffs contended that upon this insecure foundation the jury might well "infer" he would select a route farther east than Highway 110 and came to the fatal scene from the east on No. 20.

To this argument defendants respond that "an inference or presumption cannot be based upon a claimed fact which is itself based upon an inference or presumption." Doubtless defendants' argument is somewhat inaccurately stated.

The annotator in 95 A.L.R. 162, at page 182, says this phraseology apparently has been used by courts "as a con-

venient way of disposing of evidence which is regarded as too remote or uncertain to prove the ultimate facts at issue."

I am abidingly convinced that so construed it fits the basis plaintiffs suggest here for their argument that the "jury might well infer" Soreide's unfamiliarity with *present* conditions and that he would prefer the nine miles of known gravel and follow the route by it down to No. 20 instead of over to No. 110.

The present superiority of the route by way of No. 110 is apparently unquestioned by plaintiffs. There is no evidence of the respective conditions of the gravel portions of the two equidistant routes when Soreide still lived in and had charge of his Company's business in that area, even if it be conceded the jury should be permitted to *infer* his route selection on May 21, 1954, was based on his knowledge of conditions in December 1949. There is no basis for comparison of the conditions of the two routes. The jury was permitted to conjecture even as to that.

I am abidingly convinced there was no competent evidence, circumstantial or direct, to meet the testimony of defendant Vilas as to the other car coming down Highway 110 without observing its duty to stop before entering No. 20.

It is plaintiffs' misfortune they cannot account for the movements and purposes of Soreide and Evans on that fateful night. Their Company superior officer had instructed both "to go to Spencer, spend the night there and attend the grand opening of a new service station at Sutherland * * * the following morning." Their luggage was later found in a Spencer motel where they were registered. Spencer is approximately sixty miles north (on Highway 110) and Sutherland thirty-nine north and a little west of where they met death.

Whether they were in fact bound for Sioux City, fifty or sixty miles farther west, only a casual or chance wayside conversation (at the Cobblestone Ballroom) attests. The inquiry is perhaps as immaterial to us as it now is to them. I think there is prejudicial error in the record which should require reversal and that to hold otherwise is to break down a safeguard that should be preserved.

I would reverse and remand the case for retrial upon both main cases and both counterclaims. Of course if upon retrial

there was no relevant evidence of Mr. Soreide's freedom from contributory negligence, verdict should be directed against plaintiffs in their actions against defendants.

HAYS and LARSON, JJ., join in this dissent.