LaVern V. WROBLEWSKI, Appellee,

v.

LINN–JONES FS SERVICES, INC.,
Appellant.

No. 54713.

Supreme Court of Iowa.

March 16, 1972.

Fisher, Pickens & Barnes, Cedar Rapids, for appellant.

Lynch, Dallas, Smith & Harman, Cedar Rapids, for appellee.

LeGRAND, Justice.

Plaintiff suffered severe and painful burns from escaping anhydrous ammonia as he was servicing equipment at defendant's place of business on April 12, 1968. He sued defendant, alleging various acts of negligence in the maintenance of its equipment and plant. A jury trial resulted in a verdict of $17,000. Defendant has appealed. We affirm the judgment.

We are urged to reverse principally on the ground there was no sufficient evidence of defendant's negligence to submit this case to a jury. This basic argument was made at every turn, and defendant now relies on it to support its claim that a verdict should have been directed in its favor or that its motion for judgment notwithstanding the verdict should have been sustained. In the alternative defendant asks for a new trial if we should find some specifications of negligence were properly submitted, some not.

Another error alleged challenges the refusal to give a requested instruction relating to dangers inherent in the work plaintiff was doing when injured. Defendant also insists the verdict was excessive.

We have considered the liability of owners (or occupiers) of real estate in a great variety of cases in recent years. Beginning with Hanson v. Town & Country Shopping Center, Inc., 259 Iowa 542, 144 N.W.2d 870 (1966), we have been committed to the principles stated in sections 343 and 343A, Restatement, Second, Torts. We have lately passed on several cases involving injuries to independent contractors (or their employers) or other business invitees. Ives v. Swift & Company, 183 N.W.2d 172 (Iowa 1971) and Greenwell v. Meredith Corporation, 189 N.W.2d 901 (Iowa 1971). None of those decisions is helpful here, where (except for several assignments of error unrelated to defendant's negligence) the sole challenge is to the sufficiency of the evidence to support submission of the charges of negligence to the jury. As already indicated, we think there was a jury question. Before reaching the merits of the issues raised, we describe the background facts leading up to plaintiff's injuries.

I. At the time of the accident, plaintiff had been engaged in selling and servicing anhydrous ammonia equipment for more than four years and had a general familiarity with this type of business for some time prior to that. He was experienced in the repair of anhydrous ammonia equipment, and testified he knew the dangerous qualities of anhydrous ammonia if handled incorrectly.

Several days prior to the accident plaintiff met defendant's sales manager, Arnold Andersen, who asked him to do some repair work to equpment at defendant's plant. Plaintiff had been employed for this purpose on several previous occasions. In response to this request, plaintiff reported to defendant's office several days later and was directed to two pieces of equipment which needed repairs. He was also told there was "something wrong with the valve on the nurse tank." The nurse tank is a large, 1000-gallon tank mounted on wheels which, when filled with anhydrous ammonia, is hitched to a truck or tractor for hauling over fields where this fertilizer is applied through attachments which control the time and amount of release.

Plaintiff was told the anhydrous ammonia was not ejecting when release was attempted. This suggested a malfunction of the valve on the withdrawal hose. It also made it unlikely repairs could be made until the tank was emptied.

The best way to accomplish this was to by-pass the apparently defective valve and use what the witnesses referred to as the side port. This required the use of a liquid withdrawal hose other than the one already on the tank because a different type coupling was needed. Plaintiff asked Mr. Andersen if another hose was available and was told there "might be one in the equipment shed."

These hoses are specially made and tested to meet rigid specifications. This is how plaintiff described the hose, "[The hose] is tested at 1750 pounds pressure. Normal working pressure is 350 pounds. The hose is built with fabric braid or stainless steel braid. * * * The hose itself, the outer part, is pinpricked; and the reason for this is so the vapor gas part of the anhydrous ammonia permeates the walls of the hose itself. Even though it is brand new, it will permeate the hose walls. If the outer wall was sealed, it would separate from the plies of braid of the hose and burst and this is the reason the outer case of the hose is pin-pricked."

After his conversation with Mr. Andersen plaintiff went to the equipment shed and found a number of hoses lying on the floor. They were complete with valves, couplings, and nozzles. Plaintiff selected one which appeared suitable for his purpose. This choice later became one of the chief points of controversy in the law suit.

Having attached the hose to the port entry, plaintiff performed certain tests to see if the anhydrous ammonia would release. If it would, the contents could be salvaged without loss and repairs could then be effected. There is voluminous and detailed evidence about the manner in which these tests were conducted, but we consider it unimportant except as it bears on plaintiff's contributory negligence and assumption of risk. These issues were determined in favor of plaintiff, and they were not made grounds for this appeal.

While plaintiff was working toward this end, the anhydrous ammonia somehow escaped from the tank and completely "inundated" him. When this happened he sought water, lots of water, for this is the best antidote for anhydrous ammonia burns. There was none available except that contained in a five-gallon tank. Plaintiff then ran toward the office building, about 100 yards away, screaming for help. Some of the defendant's employees saw him coming, realized his plight, and immediately sought to turn on a garden hose which was attached to the office building. They knew it was imperative to get water to plaintiff as soon as possible. The garden hose did not work.

Plaintiff was then taken to a Cedar Rapids hospital where his injuries were treated and where he was confined for a period of nine days. We discuss his injuries later when dealing with the assignment the verdict is excessive.

II. As already mentioned defendant places chief reliance on the absence of evidence to sustain *any* allegation of negligence; or, failing in that, defendant insists at least some of the specifications should have been withdrawn, entitling defendant at the very least to a new trial.

█ We disagree with both arguments and hold there was sufficient evidence to submit all issues of negligence for jury determination.

█ At the outset we may concede defendant's major premise that it is error to submit a charge of negligence upon which there is no substantial evidence.

█ In considering this assignment of error, we view the evidence in its light most favorable to plaintiff. Rule 344(f)2, Rules of Civil Procedure; Brown v. Lyon, 258 Iowa 1216, 1220, 1221, 142 N.W.2d 536, 538 (1966) and citations; Soreide v. Vilas & Co., 247 Iowa 1139, 1143, 78 N.W.2d 41, 44 (1956).

Plaintiff's petition set out ten separate charges of negligence. Seven of these were submitted to the jury.

As we view the pleadings and the evidence, only three issues are raised by these allegations: (1) Failure to warn of defective liquid withdrawal hose and valve; (2) failure to have water facilities adequate to neutralize the effect of anhydrous ammonia burns; and (3) failure to maintain the garden hose, which was the only source of

water on defendant's premises, in operable condition.

All seven specifications of negligence in one form or another rely on these omissions as a basis for recovery. There is some repetition and perhaps an objection on that score would have been good, but no such complaint was made.

In reviewing the evidence upon which plaintiff's case rests, we consider only that which is favorable to him. Defendant ably and vigorously presented the issues of contributory negligence and assumption of risk. Those matters were resolved for plaintiff. We are now concerned solely with the sufficiency of the evidence to make out a jury case.

We return to the critical point at which plaintiff selected the hose and attachments from the equipment shed. The evidence is without dispute that some of the hoses on the floor of the shed—about ten in all— were operable and some not; they were not marked or tagged in any way to show which were good; Mr. Anderson knew there were both good and bad hoses when he told plaintiff he could find one there; and it is impossible to determine if a hose is defective from visual examination.

While this evidence is overwhelming on defendant's failure to warn of possible defective equipment, it does not touch the more bothersome question—was the hose selected by plaintiff in fact defective.

On this point plaintiff must necessarily depend on circumstantial evidence. In large measure this is because defendant, despite the serious injuries involved, did not preserve the equipment being used at the time; did not test it; and did not have it available for testing by plaintiff.

The jury could find this misadventure resulted either from one of the alleged defects in the equipment (plaintiff's theory) or from plaintiff's own negligence in failing to securely hold the loose end of the hose before opening the valve and applying

pressure to the line (defendant's theory.) There was much testimony on both theories.

Plaintiff testified at length concerning his care in handling the hose. He says he had it in firm control and that it could not have "whipped" without some malfunction. The testimony shows a hose like this should be racked when being stored. Instead this one was lying on the ground. Under such circumstances kinks may form on the interior of the hose.

There was also evidence, most of it from defendant's employees, that if the ammonia gushes out when the valve is "cracked"— just barely opened—there is probably a malfunction in the valve. Similarly there was testimony that if ammonia flowed through the hose when pressure was first applied and then gushed forth in great quantities, it would indicate a kink in the hose which suddenly broke loose under pressure.

■ What happened to plaintiff here is entirely consistent with either the testimony about a malfunctioning valve or that concerning a kink which straightens out under pressure. This evidence is circumstantial, but that does not render it less persuasive.

We have held circumstantial evidence must be such as to make a litigant's theory "reasonably probable, not merely possible, and more probable than any other hypothesis based on such evidence." Hackman v. Beckwith, 245 Iowa 791, 795, 64 N.W.2d 275, 278 (1954). We then added this, "But this means only the evidence must be such as to raise a jury question within the limits of the foregoing rule; it need not be conclusive." See also Larson v. Johnson, 253 Iowa 1232, 1234, 115 N.W.2d 849, 850 (1962) and Soreide v. Vilas & Co., supra, 247 Iowa at page 1143, 78 N.W.2d at page 44.

The substance of the above pronouncements is now embodied in rule 344(f), 16, R.C.P., which concludes with this state-

ment, "Generally, however, it will be for the jury or other trier of the facts to say whether circumstantial evidence meets this test [of being reasonably probable, not merely possible, and more probable than any other theory based on such evidence]."

We hold the test is met by the evidence here and that the specifications of negligence dealing with the withdrawal hose and valve were properly for the jury.

III. The remaining allegations of negligence deal with the lack of water supply and the failure of the garden hose to operate properly.

There is considerable evidence that the most effective way to fight anhydrous ammonia burns is by the immediate application of water in large quantities. Companies dealing with this dangerous product invariably have large water-filled stock tanks large enough for a man to completely immerse himself.

Several of defendant's employees testified they knew it was dangerous to be without either such a tank or easily available shower facilities in case of an accident such as that which we are considering here. A former manager of defendant's plant said he had requested a large tank for this purpose "at least four times" without success. There was also evidence that, if water had been available, plaintiff's burns would have been negligible.

We hold there was sufficient evidence to raise a jury question on defendant's failure to provide ordinary safeguards for plaintiff or to use reasonable care in furnishing him a safe place to perform the work defendant had hired him to do.

This brings us to the inoperable garden hose, plaintiff's only hope for relief immediately after his injury. Plaintiff knew the hose was there and knew, too, that there was no other source of water on the premises. When he experienced his burns, he went promptly for the hose. So did defendant's employees. When it failed them,

the only remaining course was to get plaintiff to a hospital as quickly as possible.

There is evidence, both lay and expert, that this delay turned what would have been a minor accident into a painful and enduring experience.

Defendant seeks to excuse the failure of the garden hose by saying it had always worked before; there was no knowledge of any defect; and there was no proof it had been inoperable for a sufficient length of time to impart constructive notice to defendant.

It is doubtful if this case falls within the constructive notice rule of cases like Kramer v. F. W. Woolworth Co., 255 Iowa 633, 635, 123 N.W.2d 572, 574 (1963) since the negligence relied on by plaintiff refers to conduct by or conditions created by defendant or those for whom defendant is legally responsible. See Ling v. Hosts Incorporated, 164 N.W.2d 123, 127 (Iowa 1969).

However, we do not turn our decision on that point because we hold there was enough to let the jury pass on the question. The evidence showed there was water pressure in the hose but that the nozzle would not open. Examination later disclosed an adjusting screw had become either loose or completely dislodged. It also showed, according to one witness, that the nozzle "might have been rusted shut." From this the jury could properly find the condition had existed long enough to impart constructive notice to defendant. Defendant argues the evidence that it "might have been rusted" is insufficient to sustain a finding of negligence. But defendant, we believe, misinterprets the evidence. The witness—an employee of defendant—was not expressing uncertainty about the rusted condition, only about the possible effect of it. He testified the nozzle "might have been rusted *shut*." (Emphasis added.)

We think this is far different than saying, as defendant argues, the nozzle might

have been rusted. The jury could properly have found the failure of the nozzle at the critical moment was caused by the rust, a condition which ordinarily arises over a period of time, and that defendant is chargeable with knowledge of the condition.

From what we have said it is apparent we believe all issues of negligence were supported by enough evidence to generate a jury question. We now so hold.

IV. Two other matters remain. One involves the failure of the trial court to give a requested instruction; the other the claim that the verdict was excessive.

 Defendant asked an instruction that there was no liability for "injuries sustained by a workman as a result of transitory or shifting hazards or conditions which arise as the work progresses or advances."

No doubt there are occasions when such an instruction is proper, but this is not one of them. Here the injury did not result from a danger or hazard arising out of the work being performed by plaintiff. It was not incident to or inherent in the defective condition he was seeking to repair. Here plaintiff relies entirely on specific negligent acts or omissions attributed to defendant.

The requested instruction was properly refused. The matter was adequately covered by instructions on contributory negligence and assumption of risk.

V. We also hold against defendant on the amount of the verdict. Plaintiff suffered first and second degree burns over 25 percent of his body, including his face, neck, chest, abdomen, and legs. He suffered considerable pain and was hospitalized for nine days. During part of that time he was under intensive care. He was fed intravenously, given morphine as a pain killer, and his breathing was facilitated by an oxygen catheter. Medical and hospital expense amounted to $945.65. He

has no permanent disability except for three small scars on his right shoulder and arm. He also complains of skin discoloration which he says causes him considerable embarrassment.

Fixing damages is a jury function which should be disturbed only under compelling circumstances. There is nothing to suggest any reason why we should set aside or reduce this verdict for $17,000. The circumstances under which we should interfere are discussed in Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632, 659–660 (Iowa 1969). None is present here, and we think this verdict should stand.

We find no reversible error and the judgment of the trial court is accordingly—

Affirmed.

All Justices concur except REES and HARRIS, JJ., who take no part.