# IN THE COURT OF APPEALS OF IOWA

No. 13-2025
Filed February 25, 2015

**QUAD CITY BANK & TRUST,**
    Plaintiff-Appellee/Cross-Appellant,

**vs.**

**ELDERKIN & PIRNIE, P.L.C.,**
    Defendant-Appellant/Cross-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Thomas A. Bitter, Judge.

A law firm appeals the judgment entered in a legal malpractice action and the law firm's former client cross-appeals the court's denial of its request to recover attorney fees. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

David L. Brown and Alexander E. Wonio of Hansen, McClintock & Riley, Des Moines, for appellant/cross-appellee.

Daniel P. Kresowik of Stanley, Lande & Hunter, Davenport, and W. Scott Porterfield, Roger Stetson, and Alison R. Leff of Barack, Ferrazzano, Kirschbaum & Nagelberg, L.L.P., Chicago, Illinois, for appellee/cross-appellant.

Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**MULLINS, J.**

The law firm of Elderkin & Pirnie (the law firm) appeals the judgment entered in this legal malpractice action brought by the firm's former client, Quad City Bank & Trust (the bank). The law firm claims the evidence offered by the bank was insufficient on a number of elements to sustain the bank's burden of proof. It also claims the court erred in granting the bank's motion for additur. The bank cross-appeals claiming the court erred in denying its requests to recover the attorney fees it paid to the law firm for prosecuting the underlying case. Because we find the evidence sufficient and the court's amendment of the jury verdict proper, we affirm the jury's verdict in this case. However, because we conclude attorney fees are a component of damage recoverable in legal malpractice cases, we reverse the district court's order precluding the introduction of evidence supporting the element of damages and remand the case to the district court for a new trial on the sole issue of the amount of attorney fees the bank is entitled to recover from the law firm as a result of the law firm's negligence in the Kircher lawsuit.

**I. Background Facts and Proceedings.**

The law firm represented the bank in a lawsuit against an accounting firm, Jim Kircher & Associates, P.C. The underlying lawsuit alleged the accounting firm negligently audited the financial statements of one of the bank's clients, Chapman Lumber Company. The bank had chosen to refrain from foreclosing the loans it had with Chapman Lumber based on the financial statements prepared by Kircher. These accounting statements failed to uncover problems

with Chapman Lumber's inventory and failed to disclose a secret bank account to which Chapman Lumber was diverting cash.

The case against Kircher proceeded to trial, but Kircher successfully moved to have the bank's sole expert witness excluded from testifying because the expert was not qualified to offer an opinion regarding the standard of care applicable to Kircher. *See Quad City Bank & Trust v. Jim Kircher & Assocs., P.C.*, 804 N.W.2d 83, 93–94 (Iowa 2011) (upholding the district court's ruling excluding the bank's expert from testifying because he was not qualified to offer an opinion as to the applicable standard of care). The case proceeded to the jury, which returned a verdict in favor of Kircher, and that verdict was upheld on appeal. *Id.*

The bank then brought this malpractice action against the law firm alleging the firm negligently retained an expert witness who was not qualified to offer the necessary opinions in the Kircher lawsuit and negligently failed to call this same expert as a fact witness. The malpractice case[1] proceeded to trial, and the jury returned a verdict in favor of the bank. The court entered judgment against the law firm after denying the law firm's posttrial motions and granting the bank's motion for additur. From this judgment both parties appeal.

## II. Scope and Standard of Review.

We review the district court's ruling on a motion for judgment notwithstanding the verdict for correction of errors at law. *Faber v. Herman*, 731

---

[1] For this opinion, "malpractice" case, claim, lawsuit, or trial references the case brought by the bank against the law firm, and "Kircher lawsuit" is the earlier accounting malpractice case.

N.W.2d 1, 6 (Iowa 2007). We view the evidence in the light most favorable to the judgment. *Cameron v. Montgomery*, 225 N.W.2d 154, 155 (Iowa 1975).

We review a district court's ruling on a motion to amend a verdict for abuse of discretion. *Ostrem v. State Farm Mut. Auto. Ins. Co.*, 666 N.W.2d 544, 547 (Iowa 2003); *see also Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 162 (Iowa 2004).

Finally, the question of whether attorney fees are recoverable in a professional negligence action is a legal question we review for correction of errors at law. *Sec. State Bank v. Ziegeldorf*, 554 N.W.2d 884, 893 (Iowa 1996).

## III. Sufficiency of the Evidence.

The law firm claims the bank's evidence in support of its malpractice claim falls short on a number of fronts. First, the law firm claims the evidence produced by the bank at the malpractice trial was insufficient to prove the bank could have collected a judgment against Kircher had the Kircher lawsuit been successful. Secondly, the law firm claims the evidence was insufficient to prove the amount of damages the bank would have been entitled to recover from Kircher in the underlying lawsuit. Thirdly, the law firm asserts the evidence offered in the malpractice case was insufficient to prove the Kircher audit was actually inaccurate. Finally, the law firm claims there was insufficient evidence to show the law firm's breach of duty in not retaining a qualified expert proximately caused the bank's injury—in other words, the law firm claims that there is no proof the bank would have won the Kircher lawsuit had a qualified expert been retained and been allowed to testify.

In a legal malpractice lawsuit, a plaintiff must prove:

(1) the existence of an attorney-client relationship giving rise to a duty, (2) the attorney, either by an act or failure to act, violated or breached that duty, (3) the attorney's breach of duty proximately caused injury to the client, and (4) the client sustained actual injury, loss, or damage.

*Ruden v. Jenk*, 543 N.W.2d 605, 610 (Iowa 1996). A legal malpractice action is often called a "case within a case" because the plaintiff must prove he would have been successful in the underlying lawsuit absent the lawyer's negligence. *Baker v. Beal*, 225 N.W.2d 106, 109 (Iowa 1975). All of the law firm's challenges on appeal are aimed at the lack of proof to show the bank would have been successful in the Kircher lawsuit.

**A. Collectability.** First, the law firm claims the bank failed to offer sufficient evidence from which the jury could conclude that any judgment entered against Kircher in the underlying lawsuit would have been collectable. "[I]n proving the value of the underlying claim the client has the burden to show not just that a judgment in an ascertainable amount would have been entered, but the amount that would have been collected on that judgment." *Whiteaker v. State*, 382 N.W.2d 112, 115 (Iowa 1986). The damages in a malpractice lawsuit are limited to what the injured plaintiff could have actually collected in the underlying lawsuit; otherwise, the plaintiff would be placed in a better position as a result of the lawyer's negligence. *Id.* The law firm claims that the malpractice trial was completely devoid of any facts providing the jury with a reasonable basis for determining any amount would have been collectable from Kircher.

The bank contends it offered ample evidence consisting of the law firm's own admissions that a judgment against Kircher would have been collectable. Specifically, the bank introduced a spreadsheet prepared by the law firm for the bank that outlined the various actions the bank could take to recover the money it lost when Chapman Lumber filed bankruptcy. The spreadsheet listed the claim against Kircher as having a "high" likelihood of collection. At the malpractice trial, one of the lawyers from the law firm testified that she considered Kircher to be liquid, and thus, the likelihood of collecting a judgment, if that judgment was rendered, was high. In letters from the law firm to the bank during the pendency of the Kircher lawsuit, the law firm asserted that action was the "holy grail" of lawsuits because it could result in recovering the entire loss sustained by the bank, and there was a "very high potential for substantial recoveries" against the accounting firms.[2] The lawsuits against the accounting firms were called the "strongest possibility for a recovery that could make the bank . . . whole in this matter." The law firm also assessed that the "cost of continuing is definitely outweighed by the likelihood of a recovery."

The law firm maintains that statements its attorneys made in their role as an advocate for the bank during the Kircher lawsuit should not be turned against the law firm in this malpractice action to satisfy the bank's burden of proof. However, the statements the bank relies on from the law firm are not statements the attorneys made as advocates for the bank, such as statements to the court,

---

[2] A second lawsuit was brought against another accounting firm alleging the same negligence as the lawsuit against Kircher. This second accounting lawsuit was settled prior to trial.

the opposing party, or the fact finder pleading the bank's case. These are evaluative statements made by the lawyers to the firm's own client, the bank, to justify continued pursuit of the Kircher action. The law firm continually told the bank that if a judgment was obtained against Kircher, the collection of that judgment was highly likely and would likely make the bank whole. The law firm cannot be heard to complain that the representations it made to its own client, the bank, in the prosecution of the Kircher suit are being used by the bank to help prove the bank's case. We conclude the bank offered sufficient evidence of the collectability of any potential judgment against Kircher, and thus, the law firm's challenge on this point is rejected.

**B. Damages.** Next, the law firm claims the bank failed to offer sufficient evidence to prove the amount of money it would have recovered had the Kircher lawsuit been successful. The law firm claims that conclusory testimony by a bank employee and a lawyer in the firm that the damage amount submitted to the jury in the Kircher lawsuit was $912,270 is not enough evidence. Instead, the law firm contends the bank had to offer evidence to demonstrate how the bank arrived at this number. The law firm asserts it was entitled to a directed verdict because of the lack of evidence to show what the bank would have recovered had the bank liquidated Chapman Lumber instead of deciding to forebear foreclosing the loans based on the Kircher audit statements.

"When the alleged malpractice action rests upon the defendant lawyer's mishandling of a claim or lawsuit, proof of damages necessarily involves analysis of the value of that underlying claim or cause of action." *Crookham v. Riley*, 584

N.W.2d 258, 265-66 (Iowa 1998). A bank employee testified at the malpractice trial that the amount of damages the law firm presented to the jury in the Kircher lawsuit was $912,270 and that this number represented,

> the difference between what [the bank] thinks [it] would have received if an audit had been properly prepared showing all the deficiencies, we would have shut the company down, liquidated, taken the insurance money[3] paid off our loans versus what we actually received by working with Chapman Lumber keeping their doors open, getting them to a sale of the company in June of '05 where we netted about a million 289, so the difference between those two is the $912,270.

While the bank must present evidence to show they would have obtained a superior result absent counsel's negligence, "evidence may be sufficient if damages cannot be calculated precisely but can be estimated." *Shannon v. Hearity*, 487 N.W.2d 690, 692 (Iowa Ct. App. 1992) ("The fact the evidence does not say precisely what the plaintiffs lost does not necessarily exculpate the defendant.").

The attorneys representing the bank in the Kircher lawsuit acknowledged it was their belief the bank did suffer damage as a result of Kircher's actions, which is why they recommended and pursued the lawsuit against Kircher.

> There is a distinction between proof that a party has suffered damages and proof regarding the amount of those damages. If the record is uncertain and speculative whether a party has sustained damages, the fact finder must deny recovery. But if the uncertainty is only in the amount of damages, a fact finder may allow recovery provided there is a reasonable basis in the evidence from which the fact finder could infer or approximate the damages.

---

[3] Chapman Lumber suffered a fire shortly after the bank decided to forebear foreclosing on the loan. Based at least in part on the Kircher audit statements, the bank decided to let Chapman Lumber use the insurance proceeds to rebuild instead of taking the insurance proceeds to repay the outstanding loans and selling the remaining assets of Chapman Lumber.

*Crookham*, 584 N.W.2d at 266. The evidence is sufficient in this case to prove the bank suffered damages as a result of its reliance on Kircher's audited statements. Both the testimony from the employee of the bank and the lawyers representing the bank in the Kircher lawsuit establish that fact. We also conclude there was enough evidence based on the testimony of the bank employee for the fact finder to approximate those damages by accepting the amount the bank employee testified he calculated prior to pursuing the Kircher lawsuit.

**C. Proximate Cause of Kircher.** The law firm next challenges the proof the bank submitted in support of the allegation Kircher's negligence in the preparation of the audit statements was the proximate cause of damage to the bank. The law firm contends the bank offered no evidence at the malpractice trial that supports the assertion the audit reports were inaccurate—proof Kircher was negligent in the audit is not enough according to the law firm. While the law firm concedes there was proof Chapman Lumber was inflating its inventory numbers and diverting cash in 2005 when the bankruptcy proceeding was occurring, the law firm contends there was no evidence these practices were going on when Kircher was conducting its audit in late 2003, and thus, no evidence the resulting audit statements were inaccurate. It is the law firm's contention that without proof the audit statements were inaccurate, the bank cannot prove its reliance on those statements caused the bank to lose money.

The bank asserts its accounting expert in the malpractice action testified Kircher was negligent when it failed to conduct the required testing and independent verification of the inventory and cash accounts. The expert claimed

the audit did not conform to the applicable auditing and accounting standards. In addition, the bank offered the testimony of the lawyers representing the bank in the Kircher lawsuit. The bank contends this testimony supplies the evidence necessary to sustain its burden. One of the attorneys representing the bank in the Kircher lawsuit testified that based on her investigation Kircher acted negligently and that negligence included failing to detect over-reporting of inventory in the 2003 financial statements. In a litigation memo prepared by the law firm, the attorneys in the firm asserted that "the financial statements misrepresented the assets and inventory of Chapman Lumber."

In addition, the bank called its expert, John Woods, at the malpractice trial. Woods testified:

> From reviewing the record, it was clear to me that Chapman Lumber made a practice, historically, of including whatever lumber came into its premises in its accounting records, in its inventory listings as its own assets regardless of whether it had purchased or whether it belonged to someone else, which in and of itself as a practice is—is not consistent with the requirements of generally accepted accounting principles. . . .
>     . . . .
>     . . . [A]pparently it was common practice and had been historically for some of the money to be taken by the owner and put in an account somewhere else, and the bookkeeper knew about that practice. It wasn't a secret. And in reviewing the accounting firm's engagement file, I came to the conclusion that they failed to again dig deeply enough into what was going on to learn that, in fact, some of the money was going into some other account and, in fact, once you looked a little bit, you would see that that account was nowhere on the books and that's a big problem.

Woods was unable to testify as to precisely when the over-reporting of inventory and the diverting of cash had started, but he testified that based on his review of the record, "this had been a practice of Chapman Lumber and an

element of its business for some period of time." The law firm faults this evidence as insufficient because Woods was unable to testify as to precisely when the misconduct of Chapman Lumber began. However, this challenge is aimed at the weight the jury should give to Woods's opinions, not the sufficiency of the evidence. *See generally Jones v. Otis Elevator Co.*, 861 F.2d 655, 663 (11th Cir. 1988) ("[T]he jury could evaluate the weight to be given the testimony. We find as long as a logical basis exists for an expert's opinion and the inadequacies are fully disclosed to the jury, the weaknesses in the underpinnings of the opinion, go to the weight and not the admissibility of the testimony."). We conclude the evidence of the proximate cause in the underlying Kircher lawsuit is sufficient based on the testimony of the law firm's own attorneys, who stated their investigation concluded the financial statements prepared by Kircher were inaccurate, and Woods's testimony that based on his review of the record the inventory and cash practices of Chapman Lumber had been going on "historically."

**D. Qualified Expert.** In the law firm's final challenge to the sufficiency of the evidence, law firm claims the bank has failed to offer evidence to prove that had an accounting expert testified at the Kircher trial, the result of the trial would have been different.

The bank's legal expert, Mark McCormick, testified at the malpractice action that an accounting expert opinion on the issue of the applicable standard of care for an auditor was "essential" to the Kircher lawsuit. McCormick explained based on his review of the Kircher lawsuit that after the exclusion of

the bank's auditing expert, "no witness testified that the Kircher firm was negligent." In addition, the law firm's attorneys repeatedly reported to the bank during the pendency of the Kircher lawsuit that expert opinion was necessary and essential to maintaining the action against the accounting firms. The law firm stated that retaining the expert was required "or our suit would have been dismissed." Later, the law firm asserted the expert expense was critical to the case "since it is not possible to maintain [the accounting] malpractice case without the opinion of an expert." The law firm also informed the bank prior to the Kircher trial that the case would come down to a "battle of the experts" and depend on "which of the experts the jury believes."

With the exclusion of the bank's only accounting expert, the jury in the Kircher case could not weigh one side's expert opinion against the other to see which opinion won the battle; it only heard from one side. The jury had no expert to inform them Kircher performed negligently but had three experts who testified on Kircher's behalf that there was no negligence in the performance of the audit.

Despite this clear evidence that the lack of an expert witness affected the outcome of the Kircher trial, the law firm in this appeal claims the bank needed to offer evidence that a qualified expert would have resulted in a verdict in favor of the bank. The law firm claims that the malpractice jury needed expert testimony to support the assertion that the missing expert testimony on the auditing standard of care would have made a difference to the Kircher jury.

The bank asserts such expert testimony—testifying as to how the Kircher jury would have ruled had a properly qualified expert testified—is not only

unnecessary but improper. The malpractice jury is permitted to substitute its judgment for the judgment of the Kircher jury when deciding if such testimony would have made a difference. The bank contends offering expert testimony on this issue would "invade the jury's function," and we agree. The very purpose of requiring the bank to prove the elements of the accounting negligence claim against Kircher in its legal malpractice lawsuit against the law firm is for the malpractice jury to be able to decide whether the bank would have won the Kircher lawsuit if the missing expert testimony had been offered. *See First Union Nat'l Bank v. Benham*, 423 F.3d 855, 865 (8th Cir. 2005) ("[A]lthough the issue at hand in the malpractice case is a determination of the outcome of the underlying . . . case, the jury in the malpractice case is permitted to decide this by substituting its judgment for the judgment of the factfinder, be it jury or judge, in the earlier case."); *Hickey v. Scott*, 796 F. Supp. 2d 1, 5 (D.D.C. 2011) ("Hence, in attorney malpractice cases where causation requires proof of what would have happened in the underlying case within the case, courts simply instruct the jury on the legal aspects of the case, and then leave it to the jury to decide, based on the law, what a reasonable fact-finder would have concluded if the attorney had not been negligent. . . . The only remaining question then is whether the jury should be assisted by expert testimony in making this determination. Most courts to address the issue have suggested that any affidavit or testimony from an expert arbitrator or judge as to what should have happened in the proceeding that is the subject of subsequent malpractice litigation is likely more prejudicial than probative, because the affidavit or testimony would tend improperly to

displace the fact-finder in the malpractice case within a case." (citations omitted)).

We therefore find sufficient evidence to support submitting this malpractice case against the law firm to the jury.

## IV. Additur.

During jury deliberations, the court was informed the jury had reached a verdict. In reviewing the verdict, the court noted the jury had left blank question 7, which asked the jury to state the total damages the bank suffered as a result of the negligence of the law firm. Instead, the jury wrote on the verdict form:

> Bank=35%
> E&P=65%

The court discussed the verdict with the jury foreperson, who informed the court this answer was left blank because the instructions said the court would reduce the total damages by the percentage of the bank's fault. The court sent a written instruction back to the jury telling them to complete question 7. The jury then asked for a calculator. On the note containing the court's most recent instruction the jury wrote,

$$\underline{912,207} \times .35 = 319,294.5$$
$$592,975.50$$

On the blank in question 7 of the verdict form the jury wrote the figure $592,975.50. The court held a conference with the attorneys and informed them of the verdict and that it was clear the jury had apportioned fault between the bank and the law firm though the instructions did not permit such an

apportionment.[4]    The court initially accepted the $592,975.50 verdict and reduced that amount by the 25% fault the jury had assigned to the bank from the underlying Kircher lawsuit, entering a judgment in favor of the bank in the amount of $444,731.62.

The bank filed a posttrial motion for additur or to reform the jury verdict.  In its written ruling, the court noted that the damages presented by the bank at trial were not specifically delineated so the jury had no way of parsing through the particular damage items.  The court concluded there was no basis in fact for an award of damages in the amount of $592,975.50.  It was clear to the court that the jury had found the total amount of damages to be $912,270 and then the jury improperly reduced that figure by 35% based on its finding of fault on the bank in the malpractice action.  Because the court had previously ruled the bank could not be contributorily at fault with respect to the malpractice action, the court reformed the verdict against the law firm to $684,202.50, which represents $912,270 reduced by 25%—the bank's contributory fault arising from the Kircher lawsuit.

The law firm asserts it was improper for the court to modify the jury verdict as there was no indication the jury made either a technical or ministerial mistake or error when answering question 7.  It also claims it was improper for the court to engage in speculation or conjecture regarding the jury's reasoning for awarding the amount it did.

---

[4] The instructions did permit the jury to apportion fault between the bank and Kircher for the underlying lawsuit.  The jury responded to that verdict question assigning 25% of the fault to the bank and 75% to Kircher.

"If uncontroverted facts show the amount of the verdict bears no reasonable relationship to the loss suffered, the verdict is inadequate." *Pexa*, 686 N.W.2d at 162. "In such a case, refusal by the district court to grant either an additur or a new trial is an abuse of discretion. In cases involving undisputed or liquidated damages or damages reasonably susceptible to precise calculation, additur is appropriate." *Kerndt v. Rolling Hills Nat'l Bank*, 558 N.W.2d 410, 417 (Iowa 1997).

The only damage figure the jury was given in this case was $912,270. As the district court concluded, there was no basis in fact for an award totaling $592,975.50. It was clear based on the various writings of the jury that they attempted to assign 35% fault to the bank in the malpractice action. This assignment of fault was not proper under the instructions as the court had concluded the bank could not be found contributorily at fault for the lawyers' malpractice. The only fault the bank could be assigned arose out of the underlying case between the bank and Kircher in the bank's dealings with Chapman Lumber. The jury considered that contributory fault and assessed a 25% reduction on the value of the underlying claim against the bank. We find no abuse of discretion in the court's decision to amend the jury verdict in the case to bring it into compliance with the facts and the instructions.

**V. Attorney Fees.**

In its cross-appeal, the bank claims the court should have allowed it to offer evidence of the attorney fees the bank paid to the law firm for prosecuting the Kircher lawsuit. The district court refused to permit the evidence, concluding

the case law applicable to professional negligence cases did not permit the recovery of attorney fees from the underlying case.

"Generally, attorney fees are recoverable only by statute or under a contract." *Miller v. Rohling*, 720 N.W.2d 562, 573 (Iowa 2006).[5] There is also a rare exception to this rule that permits the recovery of attorney fees when the defendant "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* The bank does not claim that a statute, a contract, or the law firm's behavior justifies an award of attorney fees here. Instead, the bank asserts that the goal of a legal malpractice action—to put clients in the position they would have occupied had the attorney not been negligent—would be defeated if the bank was not permitted to recover the attorney fees it paid to the law firm for the Kircher lawsuit. In support of its claim, the bank cites to the case of *Hook v. Trevino*, 839 N.W.2d 434, 446–48 (Iowa 2013).

In *Hook*, the defendant lawyer sought to reduce the damage award entered against him in the malpractice action by the contingency fee he would have charged the plaintiff had he been successful in the underlying action. 839 N.W.2d at 446. The supreme court rejected the lawyer's request, adopting the majority view, that to allow that setoff would result in the plaintiff not being made whole. *Id.* at 448. A plaintiff injured by legal malpractice has to retain two lawyers to obtain the recovery he is entitled to—the first negligent lawyer and a second lawyer to bring the malpractice action. *Id.* at 446. If the court would allow the negligent lawyer to set off the damages by the contingency fee, the

---

[5] Iowa follows the American Rule: "the losing litigant does not normally pay the victor's attorney's fees." *Rowedder v. Anderson*, 814 N.W.2d 585, 598 (Iowa 2012).

negligent lawyer would get the benefit of a fee not earned, and the plaintiff would be put in a worse position because the plaintiff is also obligated to pay the fees of the attorney that prosecuted the malpractice claim. *Id.* "We will not turn a blind eye to the reality that the victim of legal malpractice must retain a second lawyer to recover from the first. The legal fees are a wash." *Id.* at 448. Our supreme court did leave open "the possibility for a quantum meruit setoff from a legal malpractice recovery on an appropriate record," but it rejected such a setoff in *Hook* because the negligent attorney's actions did not benefit the client. *Id.* at 449. The injured client used different experts to prove the underlying case, had to retain additional experts on legal malpractice (this cost could have been avoided entirely had the underlying tort action been prosecuted successfully), and the recovery was delayed by years due to the attorney's negligence. *Id.*

While the *Hook* case dealt with a setoff for a contingency fee that had not yet been paid by the injured plaintiff, the bank asks that we extend the *Hook* reasoning to this case and hold that the bank is entitled to recover from the law firm the fees the bank paid for the law firm's representation in the Kircher lawsuit.

The law firm contends attorney fees are not recoverable in this malpractice action. It attempts to draw a distinction in the damages recoverable between a malpractice action where the negligent lawyer prosecuted a claim for a client versus a malpractice action where the negligent lawyer defended the client. The law firm claims attorney fees are recoverable in malpractice actions where the underlying case involved defending a client but not recoverable where the underlying case involved prosecuting a claim for a client. In support of this

proposition the law firm cites *Pickens, Barnes & Abernathy v. Heasley*, 328 N.W.2d 524, 526 (Iowa 1983).

We conclude *Pickens* does not support such a distinction. In *Pickens*, the negligent attorney both prosecuted a lawsuit for the client and defended the client from a counterclaim in the same lawsuit. 328 N.W.2d at 525. The case resulted in the client recovering nothing on the claim and paying $6000 on the counterclaim. *Id.* The attorney then sued the client for fees that had not been paid, and the client counterclaimed alleging the attorney committed malpractice. *Id.* The court used the distinction between prosecuting and defending a claim for a client to describe the differences between the damages recoverable by a client in a malpractice action. *Id.* at 526. The court made the distinction to demonstrate an injured client alleging an attorney negligently prosecuted a claim had to prove the underlying claim would have been collectable. *Id.* No such collectability proof is necessary when the negligent attorney was defending the client in the underlying case. *Id.* The client's malpractice action lacked proof of collectability on the claim prosecuted by the negligent attorney, but that only precluded the client from recovering that portion of the claim. *Id.* The court held the client could still recover for the lawyer's negligence in defending the counterclaim, and those damages included the amount the client had to pay ($6000) plus costs and attorney fees. *Id.* While the court listed attorney fees as a recoverable item of damages for the client, who was prevented by the lack of proof of collectability from recovering on the claim the attorney negligently

prosecuted a claim, it did not specifically restrict the recovery of attorney fees to only malpractice claims involving defending a client.

While our courts have not affirmatively held that attorney fees from the underlying case are recoverable in a malpractice action, the *Hook* case indicates our supreme court would be open to awarding attorney fees in legal malpractice actions. The goal of malpractice actions is to put the plaintiff back into the position it would have been had the lawyer not been negligent. The supreme court in *Hook* stated it would "not turn a blind eye to the reality that the victim of legal malpractice must retain a second lawyer to recover from the first." 839 N.W.2d at 448. Obviously paying two attorneys, the negligent attorney and the malpractice attorney, to recover one claim is not putting the injured party back in the same position. We see no reason why the logic of *Hook*, that a negligent attorney is not entitled to a setoff for a contingency fee, cannot be applied to a case where the injured client paid the negligent attorney an hourly fee for the underlying case. *See John Kohl & Co., P.C. v. Dearborn & Ewing*, No. 01A01-9609-CV-00421, 1997 WL 195469, at *6 (Tenn. Ct. App. Apr. 23, 1997) (applying the logic of a prior case where a contingency fee setoff was not allowed to permit the plaintiff in the present case to recover the fees paid to their negligent attorney "with the exception that [the negligent attorneys] receive 'credit for expenses which were incurred on behalf of [Plaintiffs] which ultimately benefitted [Plaintiffs]'"), *aff'd and remanded*, 977 S.W.2d 528 (Tenn. 1998). To deny such a recovery would not put the injured bank back into the same position it would have occupied had the law firm not been negligent.

We conclude the court erred in refusing to permit the bank to offer evidence as to the amount of attorney fees the bank paid the law firm to prosecute the Kircher lawsuit. The bank asserts we can enter an award of attorney fees based on the amount of fees they assert they were due in their offer of proof to the district court. The bank paid a total of approximately $1,007,000 to the law firm for all the work the law firm did for the bank in connection with the Chapman Lumber case including the action against Kircher. The bank asked the law firm to separate out those fees only associated with the case against Kircher, and the law firm refused to provide this breakout. The bank decided to estimate the fees at one-third of the total fees paid, and the law firm did not challenge this amount. The bank thereby asserts we should enter an award based on the "uncontroverted" evidence.

We decline the invitation to enter such an award in this case because the attorney fees to be awarded in this case are actually an element of damages in the malpractice action arising from the law firm's negligence. This element of damages should have been submitted to a fact finder to determine what amount was proximately caused by the lawyer's negligence. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 122 (Tex. 2009) ("The better rule, and the rule we adopt, is that a malpractice plaintiff may recover damages for attorney's fees paid in the underlying case to the extent the fees were proximately caused by the defendant attorney's negligence."). This is not an award of attorney fees awarded to a prevailing party based on a contract or statute where such award is usually left to the discretion of the district court to

award what is fair and reasonable. *See Ayala v. Center Line, Inc.*, 415 N.W.2d 603, 606 (Iowa 1987) (concluding in a civil rights case the judge, not the jury, is to determine the award of attorney fees to be paid to the prevailing plaintiff under the applicable statute). Because the district court withheld an element of damages from the jury, a remand for a new trial before a fact finder is necessary. *See Miranda v. Said*, 836 N.W.2d 8, 35 (Iowa 2013) (remanding a legal malpractice case for a new trial on damages where the district court erred in not submitting emotional distress and punitive damage claims to the jury).

We therefore reverse the district court's ruling withholding from the jury the evidence of the attorney fees the bank paid to the law firm in the Kircher lawsuit and remand the case for a new trial. The only issue to be submitted to a fact finder at the new trial is the amount of attorney fees the bank is entitled to recover from the law firm for the work the law firm did in the Kircher lawsuit that proximately caused the bank injury. *See Fisher v. Davis*, 601 N.W.2d 54, 61 (Iowa 1999) (remanding a case for a new trial on one element of damages alone where the other claims rejected by the original jury were separate and distinct); *see also McCarville v. Ream*, 72 N.W.2d 476, 481 (Iowa 1955) (noting the appellate court can properly limit a new trial to only those issues affected by the lower court's error). The attorney fees the bank can recover from the law firm include only those fees charged by the law firm that did not benefit the bank. *See Hook*, 839 N.W.2d at 449 (noting the work the negligent attorney did for the client did not benefit the client and the new attorney had to use different experts to prove the underlying case).

**VI. Conclusion.**

In conclusion, we reject the law firm's appeal because we find the evidence sufficient to prove all the necessary elements of the legal malpractice case and we find the court's amendment of the jury verdict was proper. However, on the cross-appeal we conclude attorney fees are a component of damages recoverable in a legal malpractice case, and we reverse the district court's order precluding the introduction of evidence supporting that element of damages. We remand the case to the district court for a new trial on the sole issue of the amount of attorney fees the bank is entitled to recover from the law firm as a result of the law firm's negligence in the Kircher lawsuit.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**