# IN THE COURT OF APPEALS OF IOWA

No. 20-1034
Filed May 26, 2021

**IN THE MATTER OF THE GUARDIANSHIP OF L.Y.,**

**G.Y. and K.Y., Guardians,**
      Appellants,

**vs.**

**S.W., Mother,**
      Appellee.

_____

Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

Guardians appeal from an order terminating a minor guardianship.
**REVERSED AND REMANDED.**

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellants.

Dani L. Eisentrager, Eagle Grove, for appellee.

Heard by Doyle, P.J., and Mullins and May, JJ.

**MAY, Judge.**

Paternal grandparents, G.Y. and K.Y., appeal the termination of their guardianship over their grandchild, L.Y.[1]  We reverse and remand.

**I. Background Facts**

In 2009, the mother, then sixteen years old, gave birth to L.Y.  At the time, the mother lived with her parents.  L.Y. would stay with the mother Mondays through Thursdays; then L.Y. would stay with the father at the paternal grandparents' home Thursday evenings through Sunday mornings.  After the mother graduated high school in 2010, she and L.Y. moved in with the father and paternal grandparents.

The mother and father married in February 2011.  They continued to live with the paternal grandparents.  Then, in July 2013, the mother, father, and L.Y. moved out of the paternal grandparents' home.  Less than three months later, in September, the couple separated.  L.Y. went to live with her paternal grandparents so she would be in a stable environment.  The mother would see L.Y. on weekends.

Then in February 2014, the parents consented to a guardianship with the paternal grandparents serving as L.Y.'s guardians.  Following the establishment of the guardianship, the mother continued to have contact with L.Y. through phone contact, weekend visits,[2] and a week-long visit during the summertime.

---

[1] L.Y. was eleven years old at the time of the hearing.

[2] According to the mother, she usually has two to three weekend visits per month. K.Y. disagreed and testified that the mother does not have consistent visits with L.Y.

In January 2016, the mother and father officially divorced. But their decree did not establish physical care or custodial rights to L.Y. for either parent. Instead, their decree stated, "[E]ach party desires that the guardianship be continued at the present time. The guardianship shall continue." Both parents signed the decree, approving it as to both "form and content."

In 2018, the mother wrote a letter to the paternal grandparents requesting the termination of the guardianship. The paternal grandparents never responded, and the mother never brought it up in person with them. On another occasion, the mother sent a text message to the father and K.Y. about ending the guardianship. This did not lead to any changes.

The mother now lives in a single-family home, where she has a bedroom for L.Y. The mother shares the home with her boyfriend. She feels ready and able to parent L.Y. So, in June 2020, she initiated these proceedings by filing a motion to terminate the guardianship.

Following a hearing, the court terminated the guardianship. The paternal grandparents appeal.

We will discuss additional facts as necessary.

## II. Standard of Review

Actions to terminate guardianships are equitable in nature. *In re Guardianship of B.J.P.*, 613 N.W.2d 670, 672 (Iowa 2000). And we review equitable actions de novo. Iowa R. App. P. 6.907. We give weight to the factual findings of the district court, but we are not bound by them. *In re Guardianship of Stewart*, 369 N.W.2d 820, 822 (Iowa 1985).

## III. Discussion

"The Iowa Minor Guardianship Proceedings Act created '[c]hapter 232D and transferred jurisdiction of guardianships for minors to the [j]uvenile [c]ourt.' The Act went into effect on January 1, 2020, and applies retroactively. So, like the juvenile court, we apply chapter 232D (2020). We find its meaning in its words." *In re Guardianship of S.P.-G.*, 954 N.W.2d 793, 795 (Iowa Ct. App. 2020) (alterations in original) (citations omitted).

### A. Grounds for Guardianship

As a preliminary issue, we address the paternal grandparents' claim that because grounds for creating a guardianship under Iowa Code section 232D.203 are still satisfied, we need not address whether to terminate it. Section 232D.203(1) provides:

> 1. The court may appoint a guardian for a minor if the court finds *all of the following*:
> a. The parent or parents having legal custody of the minor understand the nature of the guardianship and knowingly and voluntarily consent to the guardianship.
> b. The minor is in need of a guardianship because of any one of the following:
> (1) The parent having legal custody of the minor has a physical or mental illness that prevents the parent from providing care and supervision of the child.
> (2) The parent having legal custody of the minor is incarcerated or imprisoned.
> (3) The parent having legal custody of the minor is on active military duty.
> (4) The minor is in need of a guardianship for some other reason constituting good cause shown.
> c. Appointment of a guardian for the minor is in the best interest of the minor.

(Emphasis added.) The paternal grandparents suggest there are grounds for the guardianship because L.Y. "is in need of a guardianship for some other reason

constituting good cause shown." *See* Iowa Code § 232D.203(1)(b)(4). This overlooks the qualifying language in the statute that requires "all of the following" conditions be met, including the parent's consent to the guardianship. *See id.* § 232D.203(1)(a)–(c). Here, the mother unequivocally revoked her consent to the guardianship by initiating these proceedings to terminate it. So grounds for creating a guardianship under section 232D.203 are no longer met, and we must determine whether to terminate the existing guardianship.

### B. Terminating the guardianship

Iowa Code section 232D.503 governs the termination of guardianships. Subsection 232D.503(2) provides that, when a guardianship is established with parental consent, it shall be terminated
> if the court finds that the basis for the guardianship set forth in section 232D.203 is not currently satisfied **unless** the court finds that the termination of the guardianship would be harmful to the minor **and** the minor's interest in continuation of the guardianship outweighs the interest of a parent of the minor in the termination of the guardianship.

*S.P.-G.*, 954 N.W.2d at 795 (footnotes omitted).

As noted, when a parent revokes their consent to a guardianship, as the mother did here, "the basis for the guardianship set forth in section 232D.203 is no[ longer] satisfied." *See* Iowa Code § 232D.503(2); *see also id.* § 232D.203(1)(a) (permitting the court to establish a guardianship under section 232D.203 when "[t]he parent or parents having legal custody of the minor understand the nature of the guardianship and knowingly and voluntarily consent to the guardianship"). "When that occurs, subsection 232D.503(2) requires termination of the guardianship unless (1) termination would be harmful to the child and (2) the child's 'interest in continuation of the guardianship outweighs the

interest of a parent.'" *S.P.-G.*, 954 N.W.2d at 796 (quoting Iowa Code § 232D.503(2)).

So, because the mother revoked her consent to the guardianship, we must determine if termination of the guardianship would harm L.Y. and whether L.Y.'s interest in continuing the guardianship outweighs the mother's interests in terminating the guardianship. *See id.* In completing this analysis, we ask four questions. *Id.* Those four questions are: "(1) Would termination be harmful to [L.Y.]? (2) What is the [mother]'s interest in terminating the guardianship? (3) What is [L.Y.]'s interest in continuing the guardianship? (4) Does [L.Y.]'s interest in continuing the guardianship 'outweigh' the [mother]'s interest in terminating the guardianship?" *Id.* (footnote omitted).

*1. Harm to L.Y.*

We begin by considering whether termination would be harmful to L.Y. *See id.* The district court determined "termination of the guardianship would not be harmful to [L.Y]." Based on our de novo review of the record, we respectfully disagree. While the mother has maintained contact with L.Y., she has had little involvement with the nitty gritty of caring for her. The mother has never attended any of L.Y.'s school conferences, nor has she ever inquired about doing so. The mother has only attended one of L.Y.'s doctor appointments and no dentist appointments since 2014. Initially, K.Y. told the parents about appointments; but because the parents did not come along, K.Y. stopped informing them and just

took on the duty herself. So we question whether either parent would be ready to take on these essential duties.[3]

Of most significant concern to us, L.Y. began seeing a therapist at age nine to address anxiety and "perfectionist tendencies." And she has expressed anxiety to her therapist about termination of the guardianship. Her therapist testified, "[F]rom a therapeutic standpoint, I believe it would be best to keep [L.Y.] in her current environment. She has been there all of her life." The therapist raised concerns that L.Y. would have difficulty adjusting to life in her mother's care. Moreover, L.Y. told her therapist she wanted to stay with her grandparents. She also wrote a letter to that effect, which was admitted as an exhibit. So we believe terminating the guardianship and removing L.Y. from the paternal grandparents' care at this tender age would lead to harm.

*2. The mother's interest*

"We next identify the nature of 'the interest of a parent of the minor in the termination of the guardianship.'" *Id.* (quoting Iowa Code § 232D.503(2)). The mother asserts a general fundamental interest in parenting L.Y., which we recognize. *See Hensler v. City of Davenport*, 790 N.W.2d 569, 581 (Iowa 2010) ("One of the oldest fundamental liberty interests consistently recognized by the Supreme Court is the interest of parents in the care, custody, and control of their children.").

---

[3] We must acknowledge this complication: Because the parents do not have any agreement about physical care or custody, we do not know with any certainty which parent would serve as L.Y.'s physical caregiver following termination of the guardianship.

She also claims there is a parental preference. At the same time, she acknowledges that, although the preference was previously codified, it was recently repealed. *See* Iowa Code § 633.559 (2019), *repealed by* Iowa Minor Guardianship Proceedings Act, 2019 Iowa Acts ch. 56, § 43. Still she contends that because our caselaw recognized a parental preference prior to codification, *see Risting v. Sparboe*, 162 N.W. 592, 594 (Iowa 1917), the parental preference lives on through caselaw in spite of the recent statutory changes eliminating the preference. We disagree. Chapter 232D governs these proceedings. It does not include a parental preference. And we are "constitutionally prohibited" from revising Chapter 232D. *S.P.-G.*, 954 N.W.2d at 797 (quoting *Hansen v. Haugh*, 149 N.W.2d 169, 172 (Iowa 1967)); *see* Iowa Const. art III, § 1. So we cannot recognize a parental preference.

*3. L.Y.'s interest*

Next, we identify the nature of L.Y.'s interest. *See S.P.-G.*, 954 N.W.2d at 797. We conclude, "for purposes of subsection 232D.503(2), '[L.Y.]'s interest in continuation of the guardianship' depends on the degree to which termination of the guardianship would be contrary to [L.Y.]'s best interest." *Id.*

*4. Weighing the interests*

Finally, we must determine whether L.Y.'s "interest in continuation of the guardianship outweighs the interest of [the mother's] in the termination of the guardianship." Iowa Code § 232D.503(2). When weighing the two interests, we conclude L.Y.'s interest carries the day.

We note this case presents a welcome problem, so many people love and care for L.Y. and want to contribute to her loving home. Certainly, the mother's

love for L.Y. is robust and enduring. The paternal grandparents have demonstrated their love through their meticulous stewardship of L.Y. for eleven years. The father also expressed his sincere love and affection for L.Y. And extended paternal and maternal family members expressed their genuine affection for L.Y. It is our hope that all continue to be active members of L.Y.'s life. But we must reach a determination of who is currently best equipped to care for L.Y. day to day.

We believe termination of the guardianship would do significant harm to L.Y. at this time and that harm outweighs the mother's interest in termination. The upheaval to L.Y.'s life would just be too great.

One might suggest that, because terminating a guardianship always creates some upheaval, that alone is not enough to overcome a parent's interest in terminating the guardianship. We need not consider that contention because this case is unique. L.Y.'s therapist made clear that stability is crucial for L.Y.'s mental health given her struggles with anxiety. Yet, because the parents have no formal custodial agreement, terminating the guardianship would leave open the most basic question of where L.Y. would live.[4] Most aspects of L.Y.'s life would be up in the air until the parents reached a custodial arrangement.[5] She would not know where she would attend school, which extracurricular activities she could

---

[4] At oral argument, counsel for the mother referenced facts outside of our record regarding L.Y.'s current placement. We may not consider counsel's representations. "We are limited to the record before us and any matters outside the record on appeal are disregarded." *In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa Ct. App. 1994).

[5] The father testified that if the guardianship were terminated he would "go for full custody."

continue, or whether it would still be feasible for her to continue to see her current therapist. Conversely, L.Y. has lived in the paternal grandparents' home for the majority of her life, roughly ten of eleven years, where she could reasonably anticipate where she would attend school, what extracurricular activities she could participate in, who would serve as her physician, and who would provide her day-to-day care. In short, terminating the guardianship would remove L.Y. from the only long-term home she knows, and her life would lack any of the stability she desperately requires. And as a result, we believe, her mental health would suffer significantly.

Accordingly, we conclude subsection 232D.503(2) does not require termination of the guardianship at this time. So we reverse the juvenile court's termination of the guardianship. We remand to the juvenile court for entry of an order reinstating the guardianship.[6]

### C. Attorney fees

The mother requests appellate attorney fees. However, "[g]enerally, attorney fees are recoverable only by statute or under a contract." *Quad City Bank & Tr. v. Elderkin & Pirnie, P.L.C.*, 870 N.W.2d 249, 259 (Iowa Ct. App. 2015) (citation omitted). No section in chapter 232D provides for recovery of attorney fees. So we do not award any.

**REVERSED AND REMANDED.**

---

[6] Although we have determined reversal is appropriate, we wish to note our appreciation for the juvenile court's thoughtful, thorough ruling in this difficult case involving complex issues of fact and law.